Lea PIERRE, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.

No. 88–3922
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1989.

**800**

Marcia Finkelstein, New Orleans, La., for plaintiff-appellant.

Marguerite Lokey, Dallas, Tex., for defendant-appellee.

Before GARWOOD, JOLLY, and DAVIS, Circuit Judges.

PER CURIAM:

Lea Pierre (Pierre), a fifty-nine-year-old woman who claims that various physical and mental ailments have disabled her from pursuing gainful employment, appeals from a district court affirmance of the denial of her widow's disability and supplemental security income claims by the Secretary of Health and Human Services (the Secretary) under the Social Security Act (the Act), and the denial of her motion to remand for consideration of new evidence regarding mental retardation. Limited in our power to review the Secretary's decision, we affirm the district court's summary judgment refusing to vacate it as supported by substantial evidence in the record considered as a whole. We also affirm the district court's refusal to remand because the claimant has not shown good cause for failure to submit the proffered evidence earlier.

I.

Pierre's husband died on March 17, 1983. She has an elementary school education and her only employment has been as a housekeeper in a nursing home from August 1984 to March 1985. On December 27, 1985, at the age of fifty-five, Pierre filed an application for supplemental security income (SSI), 42 U.S.C. § 1381, *et seq.*, and widow's disability benefits, 42 U.S.C. § 402(e), alleging disability since April 1, 1985 due to hypertension, nerves, diabetes, and arthritis. Her applications were denied initially and on reconsideration. She requested and was granted a hearing, which was held before an administrative law judge (ALJ) on November 18, 1986. Pierre was represented by counsel during the administrative process.

Pierre testified at the hearing that she was unable to work due to chest pain, pain in her right arm and kneecaps, and dizziness from diabetes. In addition, she said she had suffered for twelve years from "bad nerves," meaning that she frequently cried and sometimes heard unintelligible voices speaking to her.

The medical evidence showed that the West Jefferson Mental Health Clinic first treated Pierre for her mental problems in January 1977. The clinic saw her monthly from October 1985 through June 1986, having diagnosed her as suffering from anxiety disorder, major depression, inability to sleep, crying spells, choking spells, and depressed appetite. The clinic prescribed several psychotropic medications for her.

In January 1986, Dr. Sheldon Hersh, consulting physician for the Secretary, examined Pierre. He found that she had a mild elevation in her blood pressure, diabetes, and depressive symptoms. In February 1986, Dr. Craig Feldbaum, a consulting psychologist for the Secretary, and Kenneth Rocky, a social worker, interviewed Pierre. The psychologist concluded that Pierre was unable to independently and appropriately perform most of her daily activities, had difficulty reading and writing, and was fired from her only previous job due to poor performance and tardiness. He felt that she would be able to work in a structured environment performing rote, repetitive tasks that required no academic or intellectual ability.

In July 1986, Dr. Gary Carroll, a consulting physician for the Secretary, examined Pierre and diagnosed degenerative joint disease of the knees, right elbow, and spine with mild functional limitations, hypertension and heart disease, anxiety-depression under treatment and control, and diabetes.

The ALJ issued a decision on April 15, 1987 finding that Pierre had a mild degenerative joint disease, mild heart disease, hypertension and diabetes under reasonably good control, and mild to moderate anxiety and depression. He further found that her impairments were not severe enough to fall within the impairments listed in the social security regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1, and that, in combination, they did not prevent her from performing her past employment as a housekeeper. The ALJ therefore concluded that Pierre was not eligible for SSI and widow's benefits. Pierre requested Appeals Council review, which was denied, making the ALJ's decision the final decision of the Secretary.

When Pierre sought judicial review of the Secretary's decision, the case was referred to a magistrate. After filing the complaint, Pierre took an intelligence quotient test on December 11, 1987 which revealed that she had an I.Q. of fifty-seven, placing her in the lower limits of the mild range of mental retardation and meeting a listed impairment for receiving widow's disability benefits. She then wrote to the Secretary, provided him with copies of the new evidence, and requested a voluntary remand of the matter for consideration of the new evidence. The record does not contain any response by the Secretary. Instead, the Secretary filed a motion for summary judgment on the original complaint. Pierre filed a cross-motion for summary judgment. The Secretary filed a supplemental memorandum explaining his decision not to voluntarily remand the matter.

The magistrate entered his findings and recommendation on August 5, 1988, recommending a remand of the matter to the Secretary for taking of additional evidence relative to Pierre's mental retardation, for further testing if deemed necessary by the Secretary, and for a new determination of Pierre's eligibility to receive SSI and widow's benefits. After considering objections from the Secretary, the magistrate entered revised findings and recommended that the Secretary's decision be affirmed and Pierre's motion to remand for new evidence be denied. The court entered judgment dismissing Pierre's suit, adopting the magistrate's findings and recommendation. This appeal followed.

## II.

On appeal, Pierre's principal contention is that the district court erred by failing to remand the case to the Secretary for consideration of the evidence that her low I.Q. meets a listed impairment for disability. In making her argument, however, Pierre intertwines two grounds of error that should be treated separately: (1) whether the ALJ fully and fairly developed the administrative record regarding her mental impair-

ment; and (2) whether there is good cause to remand this case for consideration of new evidence. Aside from the above-alleged grounds of error, Pierre does not contend that there is not substantial evidence to support the ALJ's findings. Our review of the record confirms that there is substantial evidence to support the ALJ's conclusion that the physical and mental impairments alleged during the administrative process do not constitute a disability.

## A.

Pierre asserts that the ALJ failed to fully and fairly develop the facts of her claim because he did not order that an intelligence test be performed pursuant to the Social Security regulations, which provide: "In cases involving impaired intellectual functioning, a standardized intelligence test, e.g., the WAIS, should be administered." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(D). She contends that the reports of the Secretary's examining physicians and psychologist sufficiently raised the issue that she was mentally retarded. We disagree.

■ Our function on review is limited to determining whether the record, considered as a whole, contains substantial evidence that supports the final decision of the Secretary, as trier of fact. The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the Secretary. *Davis v. Schweiker*, 641 F.2d 283, 285 (5th Cir.1981). In the administrative process, the burden is on the claimant to prove her disability by establishing a physical or mental impairment. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir.1987). It is the duty of the ALJ to fully and fairly develop the facts relative to a claim for benefits. When he fails in that duty, he does not have before him sufficient facts on which to make an informed decision. Consequently, his decision is not supported by substantial evidence. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).

■ The ALJ's duty to undertake a full inquiry, however, "does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir.1977) (emphasis in original). The decision to require such an examination is within the discretion of the ALJ. *Jones*, 829 F.2d at 526.

■ At the outset, we note that Pierre never listed mental retardation in her request for benefits; her only asserted mental impairment was "nerves." She never requested that an intelligence test be performed. The two doctors and the psychologist who examined Pierre did not suggest that her intelligence be tested. Pierre relies primarily on isolated statements in their reports to support her claim that the issue of her intelligence was before the Secretary. She points to Dr. Feldbaum's report that Pierre said she could not independently and appropriately perform most of her daily activities and his conclusion that she could only perform tasks "that would not tax her academically or intellectually." Pierre also seeks to rely on Dr. Hersh's finding that her mental status was "abnormal"; his comment, however, referred to her symptoms of depression, not to low intellectual functioning. In our review of the record, we did find two other comments that might have suggested that Pierre had low intelligence. Dr. Feldbaum's conclusion that "Ms. Pierre attributes her inability to read and write to poor vision, but she may just prefer not to admit her deficiency in this area," and Dr. Hersh's notation that Pierre "had difficulty with the day of the week" and "thought the President of the United States was Edwin Edwards."

Other parts of those medical reports, however, suggested that Pierre's mental abilities were normal. Dr. Feldbaum concluded that although Pierre was nervous she was "able to think clearly." Dr. Hersh reported that Pierre "is able to watch television, read, ride the bus herself, handle her own finances, shop, go to church and visit friends." Furthermore, Dr. Carroll concluded that Pierre's nervous condition

did not severely affect her "ability to think, remember, make decisions, get along with others, and take part in most activities"; in another report, he concluded that she "appears to be of average intelligence."

The isolated comments about the limits of Pierre's intellectual functioning, when viewed within the record as a whole, were not sufficient to raise a suspicion that Pierre was mentally retarded. This is not a case in which the ALJ failed to act upon a claimant's request for a consultative examination, *see, e.g., McGee v. Weinberger*, 518 F.2d 330, 332 (5th Cir.1975), or upon the Secretary's own consulting physician's recommendation that the claimant undergo further testing, *see, e.g., Fraction v. Bowen*, 787 F.2d 451, 454 (8th Cir.1986). When there is no contention that a claimant is mentally retarded, a few instances in the record noting diminished intelligence do not require that the ALJ order an I.Q. test in order to discharge his duty to fully and fairly develop the record. *Cf. Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir.1986) (isolated comments by claimant insufficient to raise suspicion of mental impairment necessary to require ALJ to order consultative examination); *Kimbrough v. Secretary*, 801 F.2d 794, 797 (6th Cir.1986) (when claimant had never asserted a mental impairment, no affirmative duty upon ALJ to conduct psychological examinations on all for whom source of pain is not objectively proven to be organic).

### B.

Pierre also seeks a remand of this case to the Secretary for consideration of a report showing that she has an I.Q. of fifty-seven, based on an intelligence test administered on December 11, 1987, after the Secretary's decision became final.

 This court may order additional evidence to be taken before the Secretary "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). In order to justify a remand, the evidence must first be "new," and not merely cumulative of

what is already in the record. *Szubak v. Secretary*, 745 F.2d 831, 833 (3d Cir.1984). Second, the evidence must be "material"; it must be relevant, probative, and likely to have changed the outcome of the Secretary's determination. *See Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981). Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record.

We have no difficulty in finding that the recent I.Q. test meets the first two parts of the test. The evidence is clearly new: the I.Q. test was not administered until after the Secretary's determination; and it is not merely cumulative since no other objective evidence was offered of Pierre's intellectual ability. The I.Q. test is also material since it is relevant to support the evidence in the record regarding her inability to perform daily activities and her limited intellectual ability. Furthermore, the evidence that Pierre's I.Q. is fifty-seven, if accepted by the Secretary, would have changed the outcome of his determination. Under the regulations, an individual with a valid verbal, performance, or full-scale I.Q. of fifty-nine or less meets a listed impairment and is entitled to disability benefits. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(B). We reject the Secretary's argument that because there are defects in the I.Q. test administered to Pierre, the Secretary would not change his decision. Such factual determinations about the validity of the test are properly considered by the Secretary on remand.

"It is ... the settled law of our Circuit that new evidence is not the requisite good cause for ... a remand unless a proper explanation is given of why it was not submitted earlier." *Geyen v. Secretary*, 850 F.2d 263, 264 (5th Cir.1988). Neither of Pierre's justifications for not previously incorporating the evidence into the record meets the statutory requirement for good cause. First, she simply contends that the I.Q. test was not performed until after the administrative process. The mere fact that a medical report is of recent origin is not enough to meet the good cause requirement. *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir.1987). Second, she contends that good cause exists because "none of

the medical professionals supplemented their reports with required objective test results [which] created serious gaps in the record concerning the severity of Ms. Pierre's overall mental status." This contention is a restatement of the first issue: was the ALJ required to order an I.Q. test? For the reasons given above, we find no "gap" in the record or breach of the ALJ's duty to develop the record, and thus reject her second basis for good cause.

Our decision in *Dorsey v. Heckler*, 702 F.2d 597 (5th Cir.1983), does not dictate a different result. In that case, doctors failed to discover that the claimant had severe mental disabilities until she was admitted to a hospital after the Secretary's decision. The court found the delay in submiting evidence of the claimant's hospitalization and mental condition was excusable because the onset of the claimant's debilitating mental symptoms and her subsequent hospitalization occurred during the pendency of the Appeals Council review, when there was "limited opportunity to present the new evidence to the Appeals Council." *Id.* at 606. *Dorsey* is thus distinguishable from the case here in two respects. First, the new evidence surfaced during the administrative process, but was not submitted because the Appeals Council handed down its decision two days before the claimant was released from the hospital. This is similar to cases in which a *de minimis* procedural default by a claimant in presenting new medical evidence during the administrative process constitutes good cause. *See, e.g., Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir.1987). Second, the claimant's breakdown and hospitalization were the kind of evidence that could not have been obtained earlier. In contrast, the I.Q. test at issue here could have been administered at any time. Pierre has not offered good cause why the test was not performed earlier.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.