**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 30 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JIM W. SNEED,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 03-6156
(D.C. No. 02-CV-431-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**   *

---

Before **EBEL** , **HENRY** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Jim W. Sneed appeals from the district court's order affirming the Commissioner's denial of his applications for disability benefits and supplemental security income benefits. Mr. Sneed argues the Administrative Law Judge (ALJ) failed (1) to adequately develop the record regarding his mental impairments and (2) to properly analyze his credibility. "We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). Applying these standards, we affirm.

Mr. Sneed asserts disability beginning March 21, 1995,[1] due to depression, seizures, inability to read and write, low I.Q., post-traumatic stress disorder, confusion, neck pain and back pain.[2] The ALJ denied benefits at step five of the

[1] Mr. Sneed previously filed an application for disability benefits that was denied by an ALJ decision on January 20, 1997, and not appealed. *See* Aplt. App., Vol. II at 15 (ALJ decision). This decision does not appear in the record. The Commissioner asserts that, due to the prior denial of benefits, disability could not commence before January 20, 1997. We disagree. Although the ALJ acknowledged the prior decision, he proceeded under Mr. Sneed's asserted disability date of March 21, 1995. *Id.* at 16, 21. We construe this as a de facto reopening of the prior denial of benefits. *Cf. Taylor ex. rel Peck v. Heckler*, 738 F.2d 1112, 1115 (10th Cir. 1984) (ALJ de facto reopened prior decision by reviewing case on merits and considering additional evidence).

[2] In his disability benefits application, Mr. Sneed listed seizures, back pain and the inability to read and write as the basis for disability. Because the record before the Commissioner indicated the other possible impairments, we consider these to have been properly before the ALJ. *See Hawkins v. Chater*, 113 F.3d

(continued...)

five-step sequential evaluation process.    *See* 20 C.F.R. §§ 404.1520, 416.920.    *See generally  Dikeman v. Halter* , 245 F.3d 1182, 1184 (10th Cir. 2001) (recognizing that at step five Commissioner has burden of proving claimant can perform work existing in national economy).  Before doing so, the ALJ found that Mr. Sneed suffered from the severe impairment of epilepsy and could not return to his prior very heavy, unskilled pipeline construction work.  The ALJ decided Mr. Sneed had no transferable job skills, a limited eighth-grade education and must avoid ladders, heights and moving machinery.  Nonetheless, the ALJ concluded Mr. Sneed was not disabled because he could perform light or sedentary work such as a car wash attendant, housekeeper and microfilm preparer, jobs suggested by the vocational expert (VE).  When the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner.

Mr. Sneed then appealed to the district court.  In a very thorough report and recommendation, the magistrate judge recommended affirming the Commissioner's final decision.  After reviewing de novo, the district court affirmed.  This appeal followed.

---

[2](...continued)
1162, 1164 n.2 (10th Cir. 1997).

I.

Mr. Sneed first argues that the ALJ erred by failing to adequately and properly develop the record regarding his mental impairments. Specifically, he submits the ALJ should have ordered an additional consultative examination for I.Q. testing.

An ALJ has the responsibility "in every case 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Hawkins*, 113 F.3d at 1164 (quoting *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)); *see also* 20 C.F.R. §§ 404.944, 416.1444 (requiring ALJ to look fully into issues); Social Security Ruling 96-7p, 1996 WL 374186, at *2 n.3 (requiring ALJ to develop "evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an impairment exists"). This duty is heightened when the claimant proceeds pro se. *See Henrie*, 13 F.3d at 361.

We agree with Mr. Sneed's assertion that the heightened duty applies to this case. Throughout the administrative proceedings Kenneth Clason, Mr. Sneed's friend, who is not an attorney, represented him. Also, Mr. Clason testified at the hearing on Mr. Sneed's behalf. Although Mr. Clason had personal experience with Social Security disability matters because he had been receiving

-4-

benefits himself, he had previously helped another individual obtain benefits when he called the Social Security Administration seeking guidance, and he had completed some college courses in social work, he probably did not have knowledge of the Regulations, definitely had no prior experience with ALJ hearings, and asked Mr. Sneed very few questions at the hearing. Thus, we conclude Mr. Sneed did not have representation comparable to that of an attorney. Under the circumstances, the ALJ was required to take a more active role in developing the record.

In developing the record, the ALJ "has broad latitude in ordering consultative examinations." *Hawkins* , 113 F.3d at 1166. For further investigation to be required, however, there must be "some objective evidence in the record suggesting the existence of a condition [that] could have a material impact on the disability decision." *Id.* at 1167. A claimant's "[i]solated and unsupported comments . . . are insufficient." *Id.*

Mr. Sneed made minimal references to a possible low I.Q. in his requests for reconsideration and for an ALJ hearing. *See* Aplt. App., Vol. II at 87 (noting in request for hearing that I.Q. was not addressed), 144 (questioning I.Q. in reconsideration disability report), 150 (noting I.Q. is one reason for inability to work). Also, he relies on several isolated medical statements to support his claim that the ALJ should have ordered I.Q. testing. Dr. France, a psychologist who

-5-

conducted a consultative mental examination, indicated that Mr. Sneed may have a learning disability, has low-average intelligence, could not understand proverbs, could not spell "world" backwards, could not count by threes, could not repeat six and seven digits forward and made errors in computing change. *Id.* at 206, 207. Dr. Sullivan, who conducted a consultative physical examination, surmised that Mr. Sneed is probably mildly retarded. *Id.* at 210. Dr. Lawton, also a consultative physical examiner, suspected Mr. Sneed's I.Q. is less than average. *Id.* at 169. And Dr. Rienschmiedt, a treating doctor, reported that Mr. Sneed is mentally slow secondary to a childhood brain injury. *Id.* at 267. The latter three doctors made no further assertions concerning intelligence.

Other medical evidence from Dr. France, however, suggests that Mr. Sneed did not have a sufficiently low I.Q. to impact the disability decision. *See generally* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (giving greater weight to medical specialist's opinion in area of specialty than to opinion of non-specialist). Dr. France also reported that Mr. Sneed had goal-directed language, good responses to spoken words, no gross thought disorder, good general information and long term memory, good judgment, full orientation, ability to give his history, fair abstract thinking, fair concentration and fair short term memory. Aplt. App., Vol. II at 206, 207. Significantly, neither Dr. France nor any other doctor recommended that Mr. Sneed undergo intelligence testing.

In addition, the Psychiatric Review Technique (PRT) and Mental Residual Functional Capacity Assessment (RFC) forms do not suggest Mr. Sneed's I.Q. would impact the disability decision. The PRT form indicated that Mr. Sneed would have no restriction of activities of daily living; moderate difficulty in maintaining social functioning; mild difficulty in maintaining concentration, persistence or pace; and no repeated episode of decompensation. *Id.* at 226. The RFC form indicated that except for marked limitations in the ability to understand, remember and carry out detailed instructions, Mr. Sneed is not significantly limited in understanding and memory, sustained concentration and persistence, social interaction, or adaptation. *Id.* at 238-39, 250-51.

Likewise, Mr. Sneed's activities suggest he is not so mentally impaired that he cannot work. Although he cannot make change and can only write his name, he can read "somewhat," *id.* at 45-46. He lives alone, takes care of his personal grooming, does some house cleaning, cooks, drives, attends church twice a week, shops twice a week, and visits friends. To the extent he does not do household cleaning, laundry or other tasks, he stated he lacks the incentive and interest to do so. *See id.* at 138. He testified that his main complaints were seizures, which he admitted are minor because his medications work for him, and depression. *Id.* at 39, 56. He did not indicate that he had had problems working due to his intelligence. Overall, the ALJ asked sufficient questions to learn of Mr. Sneed's

alleged impairments and the impact they had on his activities. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992).

Furthermore, in reaching a decision, the ALJ did not ignore the intelligence evidence. Rather, the ALJ took into account the record evidence concerning Mr. Sneed's asserted low intelligence when he posed hypothetical questions to the VE. The ALJ asked the VE to consider Mr. Sneed's inability to make change and do basic math and his ability to understand and perform routine tasks and follow simple instructions.

The isolated comments about Mr. Sneed's possible limited intelligence, when viewed as part of the entire record, do not sufficiently raise a question about his intelligence. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). The "few instances in the record noting diminished intelligence [did] not require that the ALJ order an I.Q. test in order to discharge his duty to fully and fairly develop the record," *id.*, even under the heightened standard we apply here.

Because the record before the ALJ contained sufficient evidence to evaluate Mr. Sneed's mental impairments, the ALJ did not err in failing to purchase an additional consultative examination to test Mr. Sneed's I.Q. Accordingly, we conclude that the ALJ did not fail to develop the record. And, contrary to Mr. Sneed's assertion, the ALJ did consider any mental impairments in combination with his physical impairments.

II.

Mr. Sneed argues that the ALJ applied incorrect legal standards in assessing his credibility and that the ALJ's resulting credibility findings were not based on substantial evidence. Mr. Sneed contends the ALJ failed to link any evidence to the credibility findings or explain how the evidence demonstrated he was not credible, as is required by Social Security Ruling 96-7p, 1996 WL 374186, at *3.

"'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.'" *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Nonetheless, the ALJ must "closely and affirmatively link[ his credibility findings] to substantial evidence and not just [make] a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

After setting forth the objective medical evidence and then summarizing Mr. Sneed's testimony at the hearing, the ALJ found that Mr. Sneed's "impairments related to functional limitations are not supported by objective medical findings to the extent alleged." Aplt. App. vol. II at 19; *see also id.* at 21 ("[Mr. Sneed's] allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision"). In light of the recitation of the

relevant evidence, we cannot say that the ALJ simply rejected Mr. Sneed's credibility in a conclusory fashion. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."). Instead, it was sufficiently specific to satisfy Social Security Ruling 96-7p and Tenth Circuit requirements. Nonetheless, we remind the ALJ of his duty to "closely and affirmatively link" his credibility findings to the objective medical evidence. *Huston*, 838 F.2d at 1133.

Mr. Sneed also argues that substantial evidence shows he is credible because his testimony demonstrated he relies extensively on family and friends to help with daily duties and he does minimal tasks himself. He believes his testimony was supported by objective evidence that he has a broad-based disc bulge and changes consistent with degenerative disc disease in his lumber spine, a seizure disorder, a small area of atrophy in his left posterior parietal cortex, abnormal neurological examination findings, limited range of motion in his low back and pain with straight leg raising.

The medical evidence, however, also shows that Mr. Sneed has mild spinal degeneration, no significant functional limitations, no problems walking and a good range of motion in his back and extremities. Notably, no doctor recommended back surgery; all recommended conservative treatment. With

-10-

respect to seizures, Mr. Sneed testified and the medical evidence showed that they are minor and controllable with medication.

We conclude both that the ALJ applied the correct legal standards and that there is substantial evidence in the record to support the ALJ's credibility findings. Accordingly, we defer to the ALJ's credibility findings. *See Kepler*, 68 F.3d at 391.

The judgment of the district court is AFFIRMED.

Entered for the Court


Robert H. Henry
Circuit Judge