**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARTIN WESLEY SIMMONS,

    Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant - Appellee.

No. 15-4037
(D.C. No. 2:13-CV-00979-PMW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **PHILLIPS**, Circuit Judges.
_____

Martin Wesley Simmons appeals from a district court order, issued by the

magistrate judge pursuant to 28 U.S.C. § 636(c)(1), upholding the Commissioner's

denial of disability benefits. Focusing on the issues raised by Mr. Simmons, we

review the Commissioner's decision to determine whether it is free of legal error and

supported by substantial evidence. *Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir.

2011). Concluding that to be the case, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The Administrative Law Judge (ALJ) denied benefits at the fifth step of the five-step sequence for assessing disability. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ first confirmed that Mr. Simmons had not engaged in substantial gainful activity since May 12, 2007, the alleged disability onset date. At step two the ALJ found Mr. Simmons had low average intellectual functioning and several other mental and physical impairments that qualified as severe at step two: "psychotic disorder (possibly status post cerebral vascular accident) with delusions and hallucinations; major depressive disorder; panic disorder; pain disorder [chronic neck and low back pain]; and degenerative disc disease." R. at 59. But the ALJ held Mr. Simmons' impairments did not meet or equal any of the presumptively disabling impairments listed in the regulations considered at step three. At step four the ALJ concluded Mr. Simmons had the residual functional capacity (RFC) for unskilled sedentary-to-light work, albeit with many additional exertional, environmental, and mental restrictions, which precluded his return to past relevant work. At step five the ALJ relied on testimony from a vocational expert (VE) to conclude Mr. Simmons could perform other numerically significant jobs in the national economy and thus was not disabled. Thereafter, the Appeals Council denied review, making the ALJ's determination the Commissioner's final decision on judicial review. *See Krauser*, 638 F.3d at 1327. Upon thorough consideration of the challenges raised by Mr. Simmons' counsel to the ALJ's determination, the district court upheld the denial of benefits and this appeal followed.

We consider only "'the issues the claimant properly preserves in the district court and adequately presents on appeal.'" *Id.* at 1326 (quoting *Berna v. Chater*, 101 F.3d 631, 633 (10th Cir. 1996)). Even liberally construed, Mr. Simmons' pro se appellate briefing is particularly inadequate.[1] For example, his complaints about contributing to social security and workers' compensation over his working life are beside the point; his criticism of the ALJ's lack of medical training and failure to bring a "professional mindset" to the case is impertinent; his objection that his medical records (addressed in the ALJ's decision) should have been discussed orally at the disability hearing is legally groundless; and his conclusory claim that the ALJ discriminated against him—because other, unidentified disability cases he considers less worthy than his were settled by the government—is frivolous. The government candidly identifies two issues that, at least arguably, were raised in Mr. Simmons' opening brief and preserved in the district court: (1) the ALJ improperly discounted the medical opinions of his treating physician; and (2) the district court erred in its treatment of a favorable disability determination made on a later application by Mr. Simmons. We agree these are the only issues properly before us.[2]

---

[1] We liberally construe Mr. Simmons' appellate filings in light of his pro se status on appeal, but we may not act as his advocate and make arguments for him. *See Walters v. Wal-Mart Stores*, 703 F.3d 1167, 1173 (10th Cir. 2013).

[2] We generally do not consider issues raised for the first time in an appellant's reply brief. *Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008). This rule applies in social security cases as in other contexts. *See, e.g.*, *Mays v. Colvin*, 739 F.3d 569, 576 n.3 (10th Cir. 2014). Mr. Simmons has given us no reason to

(continued)

## 1. Rejection of Dr. Morse's Opinions

Mr. Simmons repeatedly objects to the ALJ's dismissive treatment of his physicians as "quacks." The ALJ never used any such characterization, but did reject the opinions of Mr. Simmons' treating physician, Dr. Morse—a ruling Mr. Simmons' counsel challenged in the district court. We therefore review whether the ALJ's assessment of Dr. Morse's opinions complied with the governing regulatory framework and was supported by substantial evidence.

The opinion of a treating physician is properly denied controlling weight "'if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Soc. Sec. Ruling 96-2p and citing 20 C.F.R. § 404.1527(d)(2)). And the opinion may be rejected outright if the ALJ gives "specific, legitimate reasons for doing so," relating to such matters as "the degree to which the physician's opinion is supported by relevant evidence," the "consistency between the opinion and the record as a whole," and any "other factors . . . which tend to support or contradict the opinion." *Id.* (internal quotation marks omitted). Here the ALJ did just that, rejecting the opinions Dr. Morse had summarily indicated on medical statement forms because:

> First, Dr. Morse did not actually author an opinion on [the] form[s], as he did nothing other than check boxes or circle words. There is no basis given for his opinion, which is dramatically more restrictive and severe

depart from this settled rule and we therefore do not address any new points raised in the letter he submitted in reply to the government's answer brief.

than anything noted in his treatment records, and the great weight of the
evidence.  Furthermore, there are several internal inconsistencies . . .
[D]ue to inconsistencies, both internally and externally with his
treatment notes, and the total lack of a basis for his opinions, the
undersigned gives Dr. Morse's physical limitations no weight.

R. at 66 (also rejecting mental limitations noted by Dr. Morse "for the same reasons

that his physical limitations were discounted").

While the use of box-check or word-circle forms specifying limitations that are

*also* explained on the forms or in an associated report is not problematic, the ALJ

rightly discounted the conclusory ratings provided by Dr. Morse. *See Hamlin v.*

*Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004) (noting "such an evaluation form is

insufficient to constitute substantial evidence when it stands alone and

unaccompanied by thorough written reports or testimony"). In contrast, forms

prepared by agency medical sources that the ALJ did rely on included associated

physical and mental health summaries broadly consistent with the ratings given on

the forms. *See* R. at 411-14; 429-33.[3]

The ALJ also properly relied on the fact that Dr. Morse's impairment ratings

on the forms were far more extreme than his own treatment notes would suggest. The

Commissioner points out a number of particular inconsistencies between the notes

---

[3] Mr. Simmons' counsel objected in the district court that the summaries were
not personally prepared by the medical sources but only reviewed and approved by
them. He did not, however, cite any authority indicating that this procedure is
improper or detracts from the explanatory usefulness of the summary.

and the ratings, and these do undermine the latter.[4] But the ALJ's concern was broader—there is a general disconnect between the manageable conditions reported in the notes and the severely disabling impairments reflected in the ratings, which is especially problematic given the absence of any explanation as to how Dr. Morse derived the latter from the former. Indeed, in a January 2011 note reporting that Mr. Simmons was working part-time at FedEx, Dr. Morse only suggested that "[h]e might want to consider different work" given the heavy physical demands there, *id.* at 517-18, and then two months later Dr. Morse cleared Mr. Simmons to work as a commercial driver, *see id.* at 515. The extreme physical and mental limitations reported on the forms just do not square with the conditions discussed in the treatment notes. The ALJ also pointed out some facial internal inconsistencies in Dr. Morse's notations on the forms, but what we have already said here suffices to explain why we find no error in the ALJ's rejection of Dr. Morse's opinions.

---

[4] For example, the severe, disabling depression reported on the form, *see* R. at 547, appears well managed with medication in the notes, *see id.* at 327, 331, 333, 341, 419 (one note, in October 2010, indicates an increase in medication because "[d]epression has not been under as good of control," *id.* at 523, but a follow-up in March 2011 indicates Mr. Simmons is again "doing ok on the [medication]," *id.* at 515). And Dr. Morse's specific notation of suicidal thoughts on the form is contradicted by his notes, *compare id.* at 547 *with id.* at 327, 335, 341. Similarly, the severe, disabling neck and back pain reported on the form, *see id.* at 545, appears in the notes to be intermittent and managed at fairly low intensity through medication and exercises when not aggravated by heavy work, *see id.* at 338, 344, 352, 418, 511, 515, 517. And Dr. Morse's opinion on the form that Mr. Simmons could never rotate his neck to the left or right is contradicted by notes that reflect a fairly normal range of motion, *compare id.* at 546 *with id.* at 331, 352, 418, 523.

**2. Treatment of Favorable Decision on Subsequent Application**

Mr. Simmons obtained a favorable determination of disability on a second application for social security benefits in December 2013. That subsequent determination, based on evaluation of his condition in a later time period, "does not indicate that the original decision was in any way erroneous." *Butler v. Chater*, No. 95-7165, 1996 WL 452910, at *2 (10th Cir. Aug. 9, 1996) (unpub.); *accord Allen v. Comm'r*, 561 F.3d 646, 653 (6th Cir. 2009) ("the mere existence of the subsequent decision in [claimant's] favor, standing alone, cannot be evidence that can change the outcome of his prior proceeding"); *Winston ex rel. D.F. v. Astrue*, 341 F. App'x 995, 998 (5th Cir. 2009) ("Whether a subsequent application is approved is of no moment to the question whether the prior application was meritorious *at the time of consideration*."). Yet, as the district court noted, Mr. Simmons appeared to rely on it in support of his challenge to the original decision denying him benefits. The district court declined to consider the subsequent determination, explaining, correctly, that under 42 U.S.C. § 405(g) its review was limited to the agency record developed in conjunction with the decision before it. R. Vol. 1 at 13-14 (citing *Atteberry v. Finch*, 424 F.2d 36, 39 (10th Cir. 1970)); *accord Wilkins v. Sec'y*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc); *see also Gabrys v. Comm'r*, __ F. App'x ___, 2015 WL 6647506, at *2 (3d Cir. Nov. 2, 2015) (noting that under § 405(g) "review is limited to the evidence in the record at the time the ALJ rendered his decision" and thus "subsequent disability awards . . . do not undermine the ALJ's conclusions" in earlier decision).

7

Mr. Simmons has no grounds for objecting to the district court's treatment of his second disability determination. As noted, that determination is not in itself material to the earlier time period at issue here. And while *evidence supporting* the later determination might possibly have some relevance to the earlier period, *see Allen*, 561 F.3d at 653,[5] Mr. Simmons did not avail himself of any of the means to bring such new evidence before the agency. He did not (1) submit it to the Appeals Council on direct review of the ALJ's original decision for inclusion in the record as new material evidence under 20 C.F.R. § 404.970(b); or (2) submit it to the agency in connection with a motion to reopen the original proceeding on the basis that it met the requirements for new material evidence under 20 C.F.R. § 404.989; or (3) submit it to the district court in connection with a motion for remand on the basis that it met the requirements for new material evidence under 42 U.S.C. § 405(g).

Because Mr. Simmons has not demonstrated any error in the Commissioner's decision denying disability benefits for the period at issue, we affirm the judgment of the district court upholding that decision.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[5] For example, in *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010), the Ninth Circuit affirmed a remand to the Commissioner for consideration of a subsequent favorable disability determination in light of "the 'reasonable possibility' that [it] . . . was based on new evidence not considered by the ALJ as part of the first application."

8