# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30449

United States Court of Appeals
Fifth Circuit

**FILED**

April 11, 2016

Lyle W. Cayce
Clerk

JOHNNIE PAUL HARDMAN,

> Plaintiff – Appellant,

v.

CAROLYN W. COLVIN, Acting U.S. Commissioner of Social Security,

> Defendant – Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:12-CV-2961

Before REAVLEY, JOLLY, and ELROD, Circuit Judges.

PER CURIAM:*

Appellant Johnnie Paul Hardman appeals the judgment of the district court affirming the Social Security Commissioner's denial of Hardman's application for disability benefits. Hardman also moves to remand this matter back to the Commissioner for a rehearing in light of allegedly new, material evidence. Because the Commissioner's decision is lawful and supported by substantial evidence, we AFFIRM, and because Hardman forfeited the remand

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30449

issue by not raising it in the district court or in his appellate briefs, we DENY Hardman's motion to remand.

**I.**

Hardman applied for supplemental security income benefits on the basis of disability in April 2010.  Hardman alleged that he was disabled due to sleep apnea, gout, arthritis, high blood pressure, diabetes, heart murmur, shortness of breath, and difficulty walking.  As part of Hardman's application, he submitted a function report in which he was asked: "How well do you follow written instructions?"  Hardman responded, "I can't read that good."  After his application was initially denied, Hardman requested an administrative hearing, which was held in May 2011.

Hardman and a vocational expert testified at the hearing.  When the administrative law judge ("ALJ") asked Hardman to state his highest level of education, Hardman responded that he could not remember, and when asked about the fact that he had put "ninth grade" on his application documents, Hardman responded, "[i]t might have been eighth."  Hardman also testified that he had never attempted to get a GED.  When asked why he could not work, Hardman responded that he "get[s] real tired during the day" and "would be in serious pain all during the day" and also noted that he took medications for diabetes and high blood pressure.  When asked whether he was looking for work, Hardman replied that he looked for work "at least every time and chance I get," and when pressed for more specific testimony, Hardman responded that the last time he tried to look for work was "[m]aybe a couple of months ago."  When asked specifically where he had looked for work, he responded: "Anything that don't have to do with or requires reading or writing and my physical condition will allow me to do."  Hardman stated he had a hard time finding work because he was "not educated."

No. 15-30449

The vocational expert then testified that, given Hardman's physical limitations as characterized to her by the ALJ, Hardman was capable of working a couple of jobs, including as a "light Office Helper," as a "light Information Clerk," and as a "General Office Clerk, light." The vocational expert testified that Hardman could work those jobs with his alleged restrictions and his education level of eighth or ninth grade, as those jobs required reading or math skills up to only a sixth grade level. To this, Hardman responded that he "[did not] know how to read or do math" and that he had "no education." In response, the ALJ crafted a hypothetical that assumed as true Hardman's testimony that he could not read or write, asking the vocational expert to "change the assumptions to functionally illiterate." The vocational expert responded that an illiterate person with Hardman's physical restrictions could work only a "Small Assembly sedentary" position, of which there were 391 in Louisiana and 28,554 in the United States. With no other evidence offered from either the vocational expert or Hardman, the ALJ concluded the hearing.

The ALJ denied Hardman's application for disability benefits. The ALJ found at step five of the sequential five-step analysis that Hardman was not disabled because he was able to perform jobs that exist in significant numbers in the national economy, specifically "Light Office Helper," "General Office Clerk," "Light Information Clerk," and "Sedentary Small Assembly Worker." Regarding Hardman's education level, the ALJ considered Hardman's testimony that he had "no education" and could not read or write, but, finding that testimony not credible and uncorroborated, the ALJ found that Hardman had a ninth-grade education, as Hardman had reported in his application. The ALJ reasoned that Hardman's allegations of complete illiteracy were "not corroborated by the medical record or third party statements" and were

3

No. 15-30449

"inconsistent with his reported 9th grade education, his obtaining a driver's license, and his report of not being able to 'read that good.'" The ALJ also noted that in a Psychiatric Review Technique assessment performed in July 2010, the non-examining state psychologist concluded that Hardman had "no medically determinable mental impairment." None of Hardman's medical reports indicated any type of mental impairment or illiteracy.

Hardman thereafter obtained a non-attorney representative and filed a request for appellate review of the ALJ's decision. In his request for review to the Appeals Council, Hardman included a new piece of evidence—a February 2012 psychological evaluation by Dr. Jerry L. Whiteman that stated that Dr. Whiteman thought Hardman had "moderate mental retardation" and that Hardman had scored a 42 on the Wechsler Adult Intelligence Scale – IV test, with all of his index scores at 50 or below. Dr. Whiteman's report observed that Hardman's "thought processes/stream of mental activity lacks organization and direction." The report indicated that Hardman was "unable or unwilling" to recite the alphabet, that he did not "make any effort" to count by twos or threes, and made no effort to spell "girl" or "boy," though he did correctly spell his name and the word "go." The report also stated that Hardman's "judgment and insight" and "short term memory and concentration skills" are "poor." Dr. Whiteman marked that Hardman had "extreme" deficits in his ability to "make judgments on simple work-related decisions" and "serious" limitations in his ability to understand, remember, and carry out short, simple instructions and interact appropriately with co-workers and supervisors. Dr. Whiteman stated that Hardman's mental impairments "appear[] to be a life long deficit, existing . . . prior [to the] age [of] twenty one" but did not explain how or upon what evidence he came to that conclusion. The Appeals Council considered this new evidence along with Hardman's reasons

for disagreement with the ALJ's decision but concluded that the information did "not provide a basis for changing the [ALJ's] decision" and denied Hardman's request for review.

Hardman appealed the Commissioner's final decision to the district court, alleging (among other issues not relevant to this appeal) that: (1) the ALJ erred by not ordering post-hearing intelligence testing once Hardman claimed that he could not read or write; and (2) the hypothetical that the ALJ posed to the vocational expert was defective because it did not expressly mention the four "severe impairments" recognized by the ALJ earlier in his opinion. Hardman also requested in a supplemental pleading that the district court consider as evidence a subsequent 2014 decision by a Louisiana state agency granting Hardman disability benefits for intellectual disability. The district court, adopting the Report and Recommendation of the magistrate judge, affirmed the Commissioner's decision.

Hardman now appeals and argues that: (1) post-hearing intellectual testing should have been ordered by the ALJ; (2) the hypothetical that the ALJ posed to the vocational expert was defective; (3) the Appeals Council inadequately considered or improperly evaluated his new evidence of mental impairment; and (4) the state agency's February 2014 award of disability benefits for intellectual disability compels reversal of the Commissioner's decision in this case. After briefing concluded, Hardman filed a motion to remand to the Commissioner, which this court carried with the case.

## II.

The court reviews the district court's decision *de novo*, and our review of the Commissioner's decision, like the district court's review, is limited to whether the Commissioner's decision is supported by substantial evidence in the record and whether the proper legal standards were applied. *Morgan v.*

*Colvin*, 803 F.3d 773, 776 (5th Cir. 2015).   Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion" and constitutes "more than a mere scintilla" but "less than a preponderance" of evidence.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### III.

### A.

Hardman first argues that the Commissioner erred by failing to order post-hearing intellectual testing because Hardman's testimony during the hearing "placed the issue of a potential intellectual disability, mental retardation, squarely before the ALJ even though Appellant did not list intellectual disability or mental retardation in his application for benefits."  In other words, Hardman argues that his testimony that he had no education and could not read, write, or do math should have caused the ALJ to suspect that Hardman had an intellectual disability and to further develop the record on that issue.

When a "full and fair record" is lacking, the ALJ will not have "sufficient facts on which to make an informed decision" and thus his decision will not be "supported by substantial evidence."  *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).   However, "[t]he ALJ's duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record."  *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).  As a result, our case law "requires . . . further development of the record 'only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment,'" and "[i]solated comments in the record are insufficient, without further support, to raise a suspicion of non-exertional impairment."  *Clary v. Barnhart*, 214 F. App'x 479, 481 (5th Cir.

2007) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Pierre v. Sullivan*, 884 F.2d 799, 802–03 (5th Cir. 1989)).

In *Pierre*, this court held that isolated comments about the claimant's low intelligence were insufficient to raise suspicion that the claimant had an intellectual disability. 884 F.2d at 802–03. The court in *Pierre* noted that, like Hardman, the claimant had "never listed mental retardation in her request for benefits," she "never requested that an intelligence test be performed," and the "doctors and the psychologist who examined [her] did not suggest that her intelligence be tested." *Id.* at 802. In *Pierre*, the claimant's physicians noted that she could not perform most of her daily activities, could only perform tasks that "would not tax her academically or intellectually," could not read and write due to a possible "deficiency in this area," "had difficulty with the days of the week" and could not correctly name the President of the United States. *Id.* The court noted that other parts of the medical reports and evidence indicated that the claimant's mental abilities were normal. *Id.* at 802–03. The court concluded that "[w]hen there is no contention that a claimant is mentally retarded, a few instances in the record noting diminished intelligence do not require that the ALJ order an I.Q. test in order to discharge his duty to fully and fairly develop the record." *Id.* at 803. Similarly here, Hardman never mentioned that he may have had an intellectual disability and did not claim to have a medical impairment or mention that he had sought treatment for one.

"[T]he claimant has the burden of proving his disability by establishing a physical or mental impairment." *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).[1] A consultative examination is required to develop a "full and fair

---

[1] In *Jones,* this court noted that the claimant, like Hardman, "did not list a mental non-exertional impairment in his original request for benefits," nor did he "ever request[] a consultative examination," but relied on only his own statements about symptoms that "do[] not even approach the level of a mental or emotional impairment as defined by SSA

record" only if "the record establishes that such an examination is *necessary* to enable the [ALJ] to make the disability decision." *Id.* Hardman's isolated comments about his lack of education and inability to read, write, or do math, without more, do not establish that post-hearing testing was necessary to enable the ALJ to determine Hardman's disability status.

The ALJ had sufficient facts before him with which to determine whether Hardman was disabled. The record was replete with medical documents that spanned years, including a psychiatric residual functional capacity assessment, and none of the medical records suggested that Hardman was illiterate. The record also contained evidence that Hardman had finished eighth or ninth grade, had obtained a driver's license, and had lived on his own. Hardman himself indicated that he could read, though not very well. Hardman also indicated on his disability report that he could "read and understand English" and "write more than [his] name in English." The ALJ did not credit Hardman's testimony about his alleged illiteracy, and we are not well positioned to second-guess that credibility determination so long as the ALJ's ultimate finding was supported by substantial evidence. *See Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015). Hardman did not allege a mental impairment, and a mental impairment was not "clearly indicated" by the record. *See Leggett*, 67 F.3d at 566. We find no error in the fact that the Commissioner did not order post-hearing intellectual testing.

## B.

Next, Hardman asserts that the ALJ "posited a defective step five hypothetical" to the vocational expert such that the vocational expert's response was "meaningless." Hardman complains that although the ALJ

---

regulations." *Id.* (claimant complained of being emotionally upset and experiencing anger and depression).

found four severe impairments (diabetes, high blood pressure, obesity, and osteoarthritis), the ALJ's hypothetical "did not contain *any* of the impairments."

An ALJ's hypothetical is "defective unless[:] (1) it incorporates reasonably all disabilities of the claimant recognized by the ALJ, and (2) the claimant or [his] representative is afforded the opportunity to correct deficiencies in the hypothetical."[2]  Hardman points to no authority requiring an ALJ to expressly name the recognized severe impairments in a hypothetical posed to a vocational expert.  Rather, as Hardman acknowledges, an ALJ's hypothetical need only "incorporate reasonably" those impairments.  Moreover, Hardman "does not contend that the ALJ's questions failed to reasonably incorporate the disabilities recognized by the ALJ, or that the hypotheticals were inconsistent with the ALJ's findings."  *See Vaught v. Astrue*, 271 F. App'x 452, 455 (5th Cir. 2008).  Indeed, the limitations recognized by the ALJ in his decision were reasonably incorporated into the hypothetical posed to the vocational expert.[3]  *See, e.g.*, *Glover v. Barnhart*, 81 F. App'x 513, 514–15 (5th

---

[2] *Bellow v. Chater*, 66 F.3d 323, 1995 WL 534955, at *1 (5th Cir. Aug. 16, 1995) (unpub.) (citing *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) ("Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.")).

[3] The ALJ found in his decision that Hardman had the residual functional capacity ("RFC") to "perform light work, generally defined in 20 CFR 416.967(b) as work requiring lifting/carrying no more than 10 pounds frequently and 20 pounds occasionally, and no more than 6 hours of standing/walking in an 8 hour workday, except that claimant is restricted to no more than 2 hours of standing/walking in an 8 hour workday, with the additional nonexertional limitations of occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and no climbing of ladders, ropes or scaffolds."  The ALJ noted that Hardman's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" and that "objective medical evidence and clinical findings are

Cir. 2003) (applying *Bowling* standard and finding hypothetical not defective because hypothetical reasonably incorporated limitations recognized by ALJ, limitations were supported by substantial evidence, and ALJ gave applicant opportunity to suggest additional limitations).

The record also shows that Hardman was given the opportunity to correct any deficiencies in the hypothetical. When the vocational expert responded to the ALJ's first hypothetical, Hardman asked what the vocational expert was talking about. The ALJ asked the vocational expert to explain to Hardman the types of jobs she thought Hardman could perform, to which Hardman made objections based on his reading and math abilities. Hardman did not object to any of the physical limitations used in the hypothetical posed to the vocational expert. *See id.* As such, the hypothetical that the ALJ posed to the vocational expert was not defective. *See Goodman*, 275 F.3d 45, at *1 (holding that ALJ's hypothetical was not defective when claimant was "afforded an adequate opportunity to correct any real or asserted deficiencies in the ALJ's question"); *Madis v. Massanari*, 277 F.3d 1372, at *1 (5th Cir. 2001) (unpub.) (holding ALJ's hypothetical appropriate because it reasonably

---

fully consistent with the above residual functional capacity." At the hearing, the ALJ posed the following hypothetical to the vocational expert: "For the rest of my questions, I'd like you to assume a younger individual as that currently defined in the CFR Part-416 with the same work history and educational background. If I were to find that individual can lift and carry twenty pounds occasionally and ten frequently. Can stand and/or walk a total of two hours out of an eight hour work day. Can sit about six hours in an eight hour work day. The individual can occasionally climb ramps and stairs and never climb ladders, ropes and scaffolds. Can occasionally balance, stoop, kneel, crouch, or crawl." The ALJ's RFC determination is supported by substantial evidence—the ALJ thoroughly summarized and analyzed the medical evidence, and the medical evidence supports the ALJ's recognition of the specified limitations. *See Dise v. Colvin*, No. 15-30339, -- F. App'x --, 2015 WL 8593417, at *4 (5th Cir. Dec. 11, 2015) (holding that because the "ALJ's question here tracked his residual functional capacity assessment," and the RFC assessment was supported by substantial evidence, the ALJ's hypothetical properly accounted for the claimant's impairments).

incorporated all disabilities recognized by ALJ and because ALJ gave claimant opportunity to supplement hypothetical at the evidentiary hearing).

## C.

Hardman next argues that the Appeals Council erred in declining to review the ALJ's decision upon Hardman's submitting new evidence of mental impairment—the February 2012 report by Dr. Whiteman stating that his examination of Hardman suggested "moderate mental retardation." Hardman submitted this evidence to the Appeals Council as part of his request for review of the ALJ's 2011 decision. The Appeals Council declined to review the ALJ's decision because it found no basis under its rules for reviewing the ALJ's decision. Hardman argues the new evidence should have resulted in reversal of the ALJ's decision because the new evidence "contradict[s]" the ALJ's disability determination.

When a claimant submits new evidence to the Appeals Council, the Council must consider the evidence if it is "new and material" and if it "relates to the period on or before the ALJ's decision." *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (citing 20 C.F.R. § 404.970(b)). If the evidence is considered, then the Appeals Council will review the ALJ's decision only if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence" in the record as a whole. *Id.* Otherwise, the Appeals Council will deny the claimant's request for review. *Id.* The regulations "do not require the [Appeals Council] to provide a discussion of the newly submitted evidence or give reasons for denying review." *Id.*

Here, the Appeals Council expressly stated that it "considered . . . the additional evidence" Hardman had submitted. As such, the only question is whether the Appeals Council erred in concluding that the new evidence did not make the ALJ's decision "contrary to the weight" of the record evidence on the

whole. *Sun*, 793 F.3d at 511; 20 C.F.R. § 404.970(b). The analysis in the magistrate judge's Report and Recommendation is persuasive—though Dr. Whiteman's report could support a finding that Hardman suffers from "moderate mental retardation," other evidence in the record contradicts the report and could have supported a contrary finding. Moreover, Dr. Whiteman's report arguably was not credible. As the magistrate judge explained, Dr. Whiteman's report indicated that Hardman could have been merely "unwilling" to do the majority of the tasks used to test his intelligence, including reciting the alphabet, counting by twos or threes, and spelling "girl" and "boy." The report also opined that Hardman's extreme limitations had existed prior to the age of twenty-one without pointing to any medical evidence to support that opinion.

Even assuming that Dr. Whiteman's report is credible, it is contradicted by medical and third-party evidence regarding Hardman's cognitive and adaptive abilities. For example, the field officer who interviewed Hardman on the phone regarding his disability application indicated on the disability report that Hardman had no difficulty with "Understanding," "Coherency," "Concentrating," "Talking," or "Answering." None of the medical records (which included psychiatric evaluations and in-person evaluations) indicated mental impairment, and the records spanned years and were submitted by various physicians.

Here, even with Dr. Whiteman's report, substantial evidence supports the ALJ's denial of benefits. *See Sun*, 793 F.3d at 508 ("[T]he court . . . may not reweigh the evidence or substitute its judgment for the Commissioner's."). We have held that even when new and material evidence submitted to an Appeals Council is "significant" and "casts doubt on the soundness of the ALJ's findings," the Appeals Council does not err in refusing to review the claimant's

No. 15-30449

case if it can be determined that substantial evidence nevertheless supports the ALJ's denial of benefits. *Sun*, 793 F.3d at 511–12. Such is the case here.

**D.**

Hardman's last point asserts that his 2014 award of disability benefits from the State Agency Disability Determination Services establishes that the Commissioner erred by denying him disability benefits in 2012.[4] We have previously held that a subsequent approval of benefits is not relevant to whether the ALJ's decision in this case is supported by substantial evidence. *See Winston ex rel. D.F. v. Astrue*, 341 F. App'x 995, 998 (5th Cir. 2009); *cf. Simmons v. Colvin*, -- F. App'x --, 2015 WL 9311373, at *3 (10th Cir. Dec. 23, 2015) (stating that a favorable subsequent determination by the Commissioner "does not indicate that the original decision was in any way erroneous," citing *Winston*, and noting that under § 405(g), the court's review is "limited to the agency record developed in conjunction with the decision before it"). The district court correctly limited its review of the Commissioner's determination to the record that was available to the Commissioner at the time she made her final determination. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (explaining that the court is "constrained by the record which was available to the ALJ" and "cannot compare the ALJ's foresight with our own hindsight").

---

[4] In February 2014, the State Agency Disability Determination Services awarded Hardman per se/presumptive entitlement of benefits for intellectual disability pursuant to the Medical Vocational Guideline Listing Section 12.05(B), which Hardman states became effective on August 8, 2013. *See* 20 C.F.R. 404, Subpt. P, App'x I, § 12.05(B). Hardman admits that he does not know what medical evidence supported the DDS's award, as the Disability Determination and Transmittal does not state the medical evidence upon which the award is based. The Disability Determination and Transmittal indicates only that a doctor named Jessie F. Dees concluded that Hardman qualified for 12.05(B) disability. According to Hardman, the determination was made based upon Hardman's application and medical evidence, which included Dr. Whiteman's report.

No. 15-30449

**IV.**

After briefing had concluded in this appeal, Hardman filed a motion asking this court to remand his case back to the Commissioner for a rehearing in light of the 2014 award of benefits he received from the DDS for intellectual disability. Hardman moves to remand pursuant to the sixth sentence in 42 U.S.C. § 405(g), which allows a district court to remand a case back to the Commissioner for a new evidentiary hearing if the claimant produces "new and material" evidence and shows good cause for his failure to provide that evidence to the Commissioner in the prior proceeding.[5] The Commissioner asserts that Hardman forfeited his remand arguments because Hardman did not request or brief a "sentence six remand" before the district court. The Commissioner states that Hardman never requested a "sentence-six remand" from the district court—despite submitting the DDS's 2014 award as evidence for the district court to consider—and "never made any argument or showing that the evidence met the statute's new, material, and good cause requirements."

"Arguments not raised in the district court cannot be asserted for the first time on appeal." *Greenberg v. Crossroads Sys. Inc.*, 364 F.3d 657, 669 (5th Cir. 2004). A party must "press and not merely intimate the argument during the proceedings before the district court." *Keelean v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005). "It is well settled in this Circuit that the scope of appellate review on a summary judgment order is limited to matters presented to the district court." *Id.* at 339. We have applied this principle in the Social Security appeals context. *See Huskey v. Colvin*, 560 F. App'x 367,

---

[5] *See* 42 U.S.C. § 405(g) ("The court may, . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

370 (5th Cir. 2014) ("We will not consider on appeal an issue that previously has not been presented to the district judge unless such review is necessary to prevent a miscarriage of justice." (internal quotation marks omitted)).

Here, as in *Huskey*, Hardman did not assert arguments for a sentence-six remand under § 405(g) to the district court, and Hardman "has not explained why he did not raise this . . . before the district court or how not considering it would be a miscarriage of justice." *Id.* There are multiple elements that must be met before a sentence-six remand under § 405(g) can be granted, and § 405(g) designates the district court as the actor who should determine whether such a remand is warranted. *See* 42 U.S.C. § 405(g). The appellate court is only to review the district court's decision "in the same manner" as it would review any other district court decision. *Id.* Hardman also failed to mention his remand arguments in his initial brief. As we ordinarily do not consider claims "raised for the first time in a reply brief," we will not consider this claim, which was raised after the reply brief. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). Because Hardman has forfeited this issue, we DENY his motion to remand.

AFFIRMED.