# United States Court of Appeals
# for the Fifth Circuit

No. 20-60856

United States Court of Appeals
Fifth Circuit

**FILED**
November 29, 2021

Lyle W. Cayce
Clerk

Arthur Webster,

*Plaintiff—Appellant*,

*versus*

Kilolo Kijakazi, Acting Commissioner of Social Security,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:19-CV-97

Before Elrod, Southwick, and Costa, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

The district court affirmed the decision of the Social Security Commissioner to deny disability benefits to Arthur Webster. On appeal, Webster argues that the Administrative Law Judge erred in assessing his Residual Function Capacity and failed to develop the record by declining to order a Consultative Exam. Webster also argues that the Administrative Law Judge failed to analyze his impairments under the proper listing and failed to consider whether he could maintain employment, assuming he could find any at all. We AFFIRM.

No. 20-60856

## FACTUAL AND PROCEDURAL HISTORY

Arthur Webster is a former truck driver, combat rifle crew member in the U.S. Army, mechanic, and production assembler. He has a high school education and some college. Webster served in Iraq where he witnessed several traumatic events, including the death of a friend and the endangerment of Iraqi children. He suffered from posttraumatic stress disorder ("PTSD") following these events and was admitted into a PTSD Residential Rehabilitation Treatment Program for over a month in 2016. He also complains of numerous physical impairments including knee, foot, and back pain.

On March 19, 2019, Webster applied for Title II Social Security disability insurance benefits, alleging physical and mental impairments that began in March of 2016. Webster was 43 years old at the time of the alleged onset of his disability and 46 years old at the time of his hearing. Webster's application for benefits was denied initially and upon reconsideration. Thereafter, Webster requested a hearing before an Administrative Law Judge ("ALJ"). Though he found that Webster suffered from various impairments, the ALJ denied benefits on the grounds that none of the impairments met or exceeded the severity of the listing requirements under the applicable regulations. Additionally, the ALJ found that Webster could perform relevant past work as an assembler or perform various light effort, limited contact jobs suggested by a vocational expert.

Webster timely appealed the denial to the district court. The parties consented to a hearing before a magistrate judge, and that judge affirmed the ALJ's decision. Webster timely appealed.

## DISCUSSION

This court reviews a Commissioner's denial of social security disability benefits "only to ascertain whether (1) the final decision is

supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted). Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence "must be more than a scintilla[,] it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quotation marks and citation omitted).

To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps. *See* 20 C.F.R. § 404.1520(a)(4). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant can still do his "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work. *Id.* The claimant bears the burden on the first four steps. *See Keel*, 986 F.3d at 555. If the claimant advances that far, the burden shifts to the Commissioner to "prove the claimant's employability." *Id.*

On appeal, Webster argues that the ALJ erred for several reasons relating loosely to Steps 3 through 5 of the sequential evaluation process. These arguments can be reduced to three categories: (1) disputes about the validity of the Residual Functional Capacity ("RFC"); (2) arguments that a Consultative Exam should have been ordered; and (3) arguments raised for the first time on appeal regarding the listing impairments and Webster's ability to maintain work. We consider the arguments in that order.

I.    *The RFC was supported by substantial evidence.*

First, Webster argues that the ALJ's RFC was not supported by substantial evidence because the ALJ failed to incorporate allegedly more restrictive portions of a state agency report prepared by Dr. Angela Herzgog

and failed to accord proper weight to Webster's examiner, Dr. Charles Small. Webster argues further that the allegedly faulty RFC corrupted the ALJ's hypothetical questioning of the vocational expert.

An "ALJ is responsible for determining an applicant's residual functional capacity." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In doing so, an ALJ examines the medical evidence in the record, including the testimony of physicians and the claimant's medical records. *See id.* An ALJ usually cannot reject a medical opinion without some explanation. *See Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017).

Notably, though, ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past. *Compare* 20 C.F.R. § 404.1527 (2016), *with* 20 C.F.R. § 404.1520c; *see also* 82 Fed. Reg. 5853 (Jan. 18, 2017) (commenting that the rule change would enable courts to focus on "the content of the evidence [rather] than on the source."). For claims filed after March 27, 2017, an ALJ instead considers a list of factors in determining what weight, if any, to give a medical opinion. 20 C.F.R. § 404.1520c. The most important factors in determining the persuasiveness of a medical source are whether the source's medical opinion is based on "objective medical evidence and supporting explanations" and the "consistency" of the source's opinion with the evidence from other medical and nonmedical sources in the claim. *Id.*

The ALJ in these proceedings relied on the state agency's 2018 assessment, finding it "persuasive" because it was supported by the evidence and consistent with Webster's other records. The state agency found that Webster had the capacity to maintain attention and concentration "for two hour periods . . . without excessive interruption from psychological symptoms" and could "interact adequately, on a limited basis, receive non-

confrontational supervision, and make mental adaptions to complete unskilled tasks in a work setting, especially those requiring minimal interaction with others." Further, Webster "retain[ed] mental capacity to complete unskilled work tasks for which he remains physically capable."

Contrary to Webster's contentions, the ALJ incorporated these findings into Webster's RFC, which stated that Webster had the "residual functional capacity to perform light work as defined by 20 C.F.R. [§] 404.1567(b) except that he can engage in occasional climbing and balancing" and that he was "further limited to routine, repetitive tasks with occasional public contact." Furthermore, the ALJ appropriately used the RFC when questioning the vocational expert, and Webster's counsel had "the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Moreover, the RFC and the state agency report are reflected in the vocational expert's proposed occupations, as he specifically identified potential employment that did not require "a great deal of interaction with the public or coworkers."

The ALJ also articulated his reasons for rejecting the testimony of Dr. Small. As is required by Section 404.1520c, the ALJ considered both the consistency and supportability of Dr. Small's testimony in light of other medical opinions and evidence in the record, including Webster's hospital and VA treatment records. Ultimately, the ALJ determined that Dr. Small's testimony was only "supported" by his own findings and was inconsistent with Webster's medical history and longitudinal psychiatric treatment records indicating improvement to the symptoms caused by Webster's PTSD. Though the ALJ neither adopted the state agency report verbatim nor accepted the testimony of Dr. Small, it cannot be said that his decision

was not based on substantial evidence or that he improperly applied the relevant legal standards.

## II.    *A Consultative Exam was not required.*

Webster also argues that the ALJ erred by failing to order a requested Consultative Exam ("CE").  Webster argues that the conflicting evidence introduced by Dr. Small necessitated a further development of the record with a government-funded CE.[1]

An "ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557.  An ALJ's failure to fulfill this duty is not reversible error unless the claimant is prejudiced.  *Id.*  "A consultative examination is required to develop a 'full and fair record' only if 'the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision.'" *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (quoting *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987)).

As in *Hardman*, the record here is "replete with medical documents that spanned years." *Id.*  The ALJ reviewed Webster's medical records from both the Veteran's Administration ("VA") and the hospital, the state agency consultation, the findings of Dr. Small, and testimony from Webster's wife and mother.  Nothing in the record suggests that the ALJ needed any more medical information to reach an informed decision about whether Webster was disabled.  The ALJ's decision was based upon substantial evidence in a sufficiently developed record, and he did not err in declining to order the CE.

---

[1] Part of Webster's argument for a CE relies on his belief that the ALJ erred in determining that the record showed no evidence of prescribed knee and back braces. Though the record does evidence the *existence* of the knee brace, the pages cited by Webster do not demonstrate that either the back or knee brace were *prescribed*.

### III. *Webster's remaining arguments were waived.*

Webster advances two final claims of error that he did not raise at the district court. First, he argues that the ALJ erred by not analyzing Listing Impairment 12.15 for Trauma and Stressor related disorders. Second, he argues that the ALJ erred by failing to determine whether Webster could hold whatever job he could find for a significant period of time.

Our court adheres to the general rule that "arguments not raised before the district court are waived and cannot be raised for the first time on appeal." *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). An argument is not waived, though, "if the argument on the issue before the district court was sufficient to permit the district court to rule on it." *Horton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004) (citation and quotation marks omitted).

Webster did not raise these arguments at the district court or present them in a manner sufficient for the district court to rule on them. Nor did he respond to the Commissioner's arguments that they were waived. Consequently, we hold that Webster waived these arguments.

AFFIRMED.