# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 14, 2023

Lyle W. Cayce
Clerk

No. 22-20609

Linda Jeanette Wills,

*Plaintiff—Appellant*,

*versus*

Kilolo Kijakazi, *Acting Commissioner of Social Security*,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1391

_____

Before Wiener, Southwick, and Duncan, *Circuit Judges*.

Per Curiam:[*]

The district court affirmed the Social Security Commissioner's decision denying disability benefits to Linda Wills. Wills contends the Administrative Law Judge failed to develop the record in assessing her Residual Functional Capacity and, therefore, the denial of benefits is not supported by substantial evidence. We disagree. AFFIRMED.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20609

## FACTUAL AND PROCEDURAL BACKGROUND

On December 28, 2018, Linda Jeanette Wills applied for Title II Social Security disability benefits. She alleged her disability began December 16, 2017, due to physical impairments, vision problems, depression, asthma, and migraines.

On initial review, a State Agency Medical Consultant ("SAMC") determined on March 5, 2019, that Wills had no exertional limitations and was not disabled. The SAMC nonetheless recommended she avoid concentrated exposure to extreme temperatures, wetness, humidity, and pulmonary irritants, and avoid all exposure to hazards.

Wills asked for reconsideration. In a decision of May 28, 2019, a different SAMC assessed Wills as having limited left near and far acuity, limited depth perception, and limited field of vision. The SAMC recommended she avoid concentrated exposure to hazards and working with moving objects, scaffolds, and heights. She was again, though, found not to be disabled.

In the reconsideration decision, Wills was informed she could request a hearing before an Administrative Law Judge ("ALJ"). She made that request, and a telephonic hearing was conducted on August 13, 2020. Wills was represented by counsel.

Wills and a vocational expert testified at the hearing. Wills stated that, prior to surgery in November 2019, she "was crawling around [her] house, [because she] couldn't stand or walk." Since the surgery, her condition had improved. Still, she had been experiencing pain and stiffness in her back and neck. Additionally, looking down caused headaches and numbness in her face and neck. All of this, she claimed, made walking and sitting painful. She explained that she could walk to her mailbox — though with pain — before having to rest, and that on her "good days" she could walk to the corner of

No. 22-20609

her street.  Moreover, she could sit for approximately 15 to 20 minutes before having to change positions, and she could stand for approximately 20 minutes, provided she was able to move around.  She further stated that she could not reach upward without becoming dizzy.

The ALJ determined Wills had not engaged in substantial gainful activity since her alleged disability date and was significantly limited by her physical, but not her mental, impairments.  Additionally, her impairments did not meet the severity of any of the enumerated conditions in the applicable regulation.  Further, the ALJ found that although Wills's "impairments could reasonably be expected to cause the alleged symptoms," she was not as limited as she claimed.

The ALJ determined Wills had the Residual Functional Capacity ("RFC") to perform "sedentary work with an option to alternate sitting and standing."[1]  In addition, the ALJ provided that Wills's ability to work would be further restricted by a host of physical limitations due to her cervical degenerative disc disease, vertigo, arthritis, impaired vision, and asthma.

The ALJ also found, based on the vocational expert's testimony, that even though Wills's RFC made her unable to perform any past relevant work, she had acquired skills from her work experience which were transferable to other occupations existing in significant numbers without vocational adjustment.  Therefore, the ALJ concluded she was not disabled during the alleged disability period and denied her application.

------

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. § 404.1567(a).

No. 22-20609

The Appeals Council denied Wills's request for review, making the ALJ's opinion the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

Wills petitioned for review in district court as permitted by 42 U.S.C. § 405(g). The parties consented to proceed before a magistrate judge. Summary judgment was granted in favor of the Commissioner, and Wills timely appealed.

## DISCUSSION

Our review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quotation marks and citation omitted). "A finding of no substantial evidence is appropriate *only* if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (emphasis added) (quotation marks and citation omitted). We must "not reweigh the evidence or substitute [our] judgment for the Commissioner's." *Perez*, 415 F.3d at 461.

In making a disability determination, the Commissioner follows a five-step approach and considers:

> (1) whether the claimant is engaged in substantial gainful activity, (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment meets or equals one of the listings in the relevant regulations, (4) whether the claimant can still do his past relevant work, and (5) whether the impairment prevents the claimant from doing any relevant work.

4

No. 22-20609

*Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quotation marks and citation omitted).

A claimant's RFC represents the most the claimant can do in a work setting with her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC is used at steps four and five to determine if she can still perform her past relevant work or adjust to other work. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1520(e)).

Wills argues here, first, that the ALJ failed to develop the record adequately before making her RFC determination. That led, second, to the ALJ's impermissibly drawing conclusions from raw medical data based only on her lay interpretation. Finally, those shortcomings mean the RFC determination is not supported by substantial evidence. We will separately consider each of those arguments.

### I.    *Development of the record*

Wills argues the ALJ failed to develop the record, which led to applying the incorrect legal standard, for two reasons: (1) the ALJ relied on stale medical opinions, and (2) the ALJ should have obtained a consultative examination regarding Wills's ability to work in her deteriorated condition.

Wills contends the two SAMC opinions were "stale" because they were rendered before her lumbar/cervical condition deteriorated and additional procedures were performed, particularly her November 2019 surgery. Wills avers that, by relying on unusable medical opinions, the ALJ effectively did not rely on *any* medical opinion.

First, the record does not support that the ALJ even relied on the SAMC opinions. The ALJ stated she had "considered both prior administrative medical findings; however, both [were] inconsistent with the overall record and fail[ed] to consider all impairments." Wills maintains that

the ALJ must have implicitly relied on those administrative findings, at least in part, because her ordered limitations incorporate aspects of those findings. That is unconvincing speculation, however, in light of the ALJ's directly indicating the contrary. The ordered limitations share some similarities with the SAMC opinions, but that does not invalidate them.

Second, even if the ALJ did partially rely on the SAMC reports, and even if those findings were stale, Wills fails to show this would constitute error. That is particularly so here where the ALJ acknowledged the shortcomings of the reports and proceeded to incorporate additional symptoms in imposing her *more restrictive* limitations — that is, more favorable to Wills — than those previously suggested. Rather, the applicable regulations support that the ALJ was entitled to find the administrative findings partially persuasive and then use those findings, together with other relevant record evidence, in making her RFC determination. *See* 20 C.F.R. § 404.1520c (providing Commissioner will determine "how persuasive" it finds medical opinions and prior administrative medical findings); *id.* § 404.1545(a)(3) ("We will assess your [RFC] based on *all* of the relevant medical and other evidence." (emphasis added)).

Wills additionally argues the ALJ at least should have obtained a consultative examination to account for her deteriorated condition. Wills, in her opening brief, appears to interpret a series of district court decisions — not holdings from this court — as stating a *per se* rule that the ALJ fails to develop the record if: (a) the only medical opinion speaking to the effect of a claimant's impairments on her ability to work is provided prior to a significant development in the claimant's condition; and (b) the ALJ does not order a consultative examination to consider that development. We interpret her reply brief as arguing a lesser point that, in this case, an additional medical opinion was needed.

We conclude that any *per se* rule is inappropriate and instead rely on the duty of an ALJ "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *See Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (quotation marks and citations omitted). "A consultative examination is required to develop a full and fair record only if the record establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Webster*, 19 F.4th at 720 (alteration omitted) (quotation marks and citations omitted). Indeed, even where the record lacks any medical opinions "describing the types of work that the applicant is still capable of performing," "[t]he absence of such a statement . . . does not, in itself, make the record incomplete." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Instead, these types of medical opinions are just one of several categories of evidence the ALJ considers in making RFC determinations. *See* 20 C.F.R. § 404.1513. In fact, "where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

Here, the "record was replete with medical documents that spanned years." *See Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016). There were over 1,000 pages of Wills's medical records which included extensive progress notes — prepared by health care professionals directly caring for Wills — regarding her impairments, treatment, progress, mobility, and symptoms. Many of those records corresponded to examinations and procedures occurring subsequent to the medical consultants' evaluations. An important record was of a November 2019 discectomy and fusion.

Further, the ALJ heard testimony from Wills regarding her ability to conduct daily tasks and from a vocational expert regarding jobs available for someone with the RFC being considered. Although a consultative examination may have been helpful, the record does not support that more

information was necessary in order for the ALJ to make the decision about disability. *See Webster*, 19 F.4th at 720.

We find no error in the development of the record.

## II.     *The ALJ did not draw medical conclusions*

Next, Wills maintains that the allegedly undeveloped record led the ALJ to engage in impermissible fact-finding by drawing medical conclusions from raw medical data based only on her lay interpretation. In other words, Wills claims, the ALJ was "playing doctor." *See Frank v. Barnhart*, 326 F.3d 618, 621–22 (5th Cir. 2003). In doing so, Wills relies heavily on imaging conducted on her neck and back relating to her November 2019 operation, arguing that the ALJ lacked the medical expertise required to interpret that data. Our review reveals the ALJ did not merely observe tests conducted on Wills and opine on what conditions they presented and their effects. Rather, the ALJ examined Wills's extensive medical history documenting such matters as test results, physicians' interpretations of those tests, diagnoses, treatments and procedures, and information regarding her recovery from those procedures. Most important was the documentation related to Wills's mobility and reported pain following her November 2019 surgery.

An ALJ is to assess RFC "based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1). The record convinces us that the ALJ did not improperly draw medical opinions from raw data but properly examined the extensive medical documentation.

## III.     *The RFC determination is supported by substantial evidence*

Finally, we examine whether the RFC determination is supported by substantial evidence. Once more, the record is "replete with medical documents" describing Wills's conditions, treatment, and recovery. *See Hardman*, 820 F.3d at 148. The ALJ heard Wills's testimony regarding her

No. 22-20609

mobility and symptoms, assessed her credibility against that objective medical evidence, and determined her symptoms were legitimate, but not as serious as she claimed. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (alterations omitted) (quotation marks and citations omitted). The ALJ then correctly stated that the SAMC opinions failed to account for all of Wills's impairments. The ALJ then examined the relevant testimony and medical records and gave a sufficient explanation of her analysis. "Furthermore, the ALJ appropriately used the RFC when questioning the vocational expert, and [claimant's] counsel had the opportunity to correct deficiencies in the ALJ's question[s] by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions." *See Webster*, 719 F.4th at 719 (quotation marks and citation omitted).

We have already acknowledged that a consultative examination regarding Wills's ability to work in her current state might have been helpful, but "we cannot say that 'no credible evidentiary choices or medical findings support the [ALJ's] decision.'" *Whitehead*, 820 F.3d at 781 (quoting *Boyd*, 239 F.3d at 704).

The decision is supported by substantial evidence.

AFFIRMED.