# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 12, 2023

Lyle W. Cayce
Clerk

_____

No. 22-30721

_____

Walter Daigle,

*Plaintiff—Appellant*,

*versus*

Kilolo Kijakazi, *Acting Commissioner of Social Security*,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-764

_____

Before King, Smith, and Elrod, *Circuit Judges*.

Per Curiam:[*]

Walter Daigle appeals the Commissioner's decision to deny him disability benefits. We AFFIRM.

## I.

In May 2019, Plaintiff-Appellant Walter Daigle filed an application for disability insurance benefits alleging disability since August 2018. His alleged ailments include major depressive disorder, anxiety, obsessive-compulsive

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

disorder ("OCD"), fatty liver, irritable bowel syndrome, high blood pressure, and acid reflux. In December 2020, an administrative law judge ("ALJ") denied Daigle's application and found him not disabled within the meaning of the Social Security Act. Daigle then requested a review of the ALJ's decision by the Appeals Council, which denied his request; accordingly, the ALJ's December 2020 decision became the Social Security Commissioner's (the "Commissioner") final administrative decision.

Daigle then appealed the Commissioner's decision to the district court. In July 2022, the magistrate judge assigned to the case recommended that the Commissioner's decision be affirmed. In October 2022, the district court adopted this recommendation and affirmed the ALJ's decision. Daigle appeals, arguing that the ALJ erred in finding that Daigle's condition does not meet the requirements of Listing 12.06 and that the ALJ's decision is unsupported by substantial evidence.

## II.

"Our standard of review of social security disability claims is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012); *see also* 42 U.S.C. § 405(g). When substantial evidence supports the ALJ's findings, these findings "shall be conclusive" and must be affirmed. 42 U.S.C. § 405(g). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison*, 305 U.S. at 229). We cannot "reweigh the evidence in the record, nor try the issues de

novo, nor substitute" our own judgment for that of the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988)). It is the role of the Commissioner, not the courts, to resolve any conflicts in evidence. *Id.*

## III.

### A.

To determine whether a disability exists, the ALJ follows a five-step evaluation process. 20 C.F.R. § 404.1520(a)(1). The claimant carries the burden of proof at the first four steps of the process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the ALJ finds that the claimant is not disabled at any step, the inquiry ends. *Id.*; 20 C.F.R. § 404.1520(a)(4).

This appeal primarily concerns the third and fourth steps of this process. The third step asks whether the claimant's impairment meets or medically equals a listed impairment; if so, the ALJ will find the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the third step is inconclusive, the fourth step asks whether the impairment and resulting residual functional capacity prevent the claimant from performing his past relevant work. *Id.* § 404.1520(a)(4)(iv). If they do not, the ALJ will find that the claimant is not disabled. *Id.*

### B.

Daigle first argues that the ALJ erroneously found at the third step that his condition does not meet the requirements under listing 12.06 of 20 C.F.R. Part 404, Subpart P, Appendix 1, which addresses anxiety and obsessive-compulsive disorders. The ALJ found that Daigle did not meet the criteria for disability under Listing 12.06(B) because he did not exhibit the required "[e]xtreme limitation of one, or marked limitation of two . . . areas of mental functioning," including (1) understanding, remembering, or

applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. With respect to anxiety and obsessive-compulsive disorders, a "marked" degree of impairment reflects "seriously limited" function on a "sustained basis," while an "extreme" degree of impairment constitutes "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(d)–(e).

The ALJ properly found that Daigle was only mildly to moderately impaired in these areas.[1] Daigle reported he was able to shop in stores, handle his own money, leave the house alone, eat out, prepare meals, and perform household chores. Daigle's ability to handle such tasks is inconsistent with his argument that he exhibited extreme limitations on his ability to concentrate, persist, and maintain pace. And such findings are also consistent with Daigle's medical records, which show improvement in his symptoms, as well as normal attention, concentration, and memory function at an August 2019 examination. The ALJ's finding at the third step is adequately supported by substantial evidence.

## C.

Daigle next argues that the ALJ's non-disabled determination at the fourth step is unsupported by substantial evidence. On appeal, Daigle brings numerous scattershot challenges to this finding. None compels reversal.

First, he contests the ALJ's conclusion that his completion of minimal daily activities is probative of his ability to work. The ALJ properly considered such daily activities. *Leggett*, 67 F.3d at 565 & n.12 ("It is appropriate for the Court to consider the claimant's daily activities when

---

[1] "Mild" reflects "slightly limited" functioning and "moderate" a fair level of functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2).

deciding the claimant's disability status."); *see* 20 C.F.R. § 404.1529(a) (considering how the symptoms affect an applicant's "activities of daily living" and "ability to work"). And the ALJ's characterization of Daigle's daily activities is supported by the record. Contrary to Daigle's conclusory assertions of "extreme OCD behavior," Daigle reported that he was able to care for himself, drive, shop, handle his own funds, and visit with others during the relevant period.

Second, Daigle makes three separate arguments that rely on the treatment notes of Dr. Jonathan Rynning. He argues that the ALJ erroneously concluded that treatment with the drug Paxil improved Daigle's condition while ignoring Dr. Rynning's belief that Paxil was ineffective. He also argues that the ALJ's rejection of Dr. Rynning's opinions regarding Daigle's functional capacity is not supported by substantial evidence. And finally, he argues that, contrary to the ALJ's conclusion, Dr. Rynning's opinions are entirely consistent with the treatment notes. All three challenges fail.

The ALJ properly found Dr. Rynning's notes to be inconsistent with the remainder of the record. "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past." *Webster v. Kijakazi*, 19 F.4th 715, 718–19 (5th Cir. 2021). "The most important factors in determining the persuasiveness of a medical source are whether the source's medical opinion is based on 'objective medical evidence and supporting explanations' and the 'consistency' of the source's opinion with the evidence from other medical and nonmedical sources in the claim." *Id.* at 719. Here, the ALJ properly found that the extreme mental limitations Dr. Rynning identified were not consistent with the record. The record shows Daigle traveled numerous times and went out to eat. Daigle himself testified that he was able to drive and drove himself to medical appointments. Furthermore, the record is replete with medical evidence of improvements in Daigle's condition.

Per the ALJ's findings, the extreme limitations described by Dr. Rynning are unpersuasive as inconsistent with other record evidence. And as we have held, we may not reweigh the evidence or substitute our judgment for that of the Commissioner; we will find "no substantial evidence" only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson*, 864 F.2d at 343–44 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Neither is present here; the ALJ made a credible choice, finding Dr. Rynning's opinion unpersuasive in light of multiple other pieces of medical evidence. Accordingly, Daigle's challenges based on Dr. Rynning's notes fail.

Third, Daigle argues that the ALJ inadequately explained how Daigle's statements regarding his symptoms are inconsistent with medical and other evidence. Daigle does not specify which statements he believes the ALJ incorrectly disregarded, but as discussed above, the ALJ repeatedly cited evidence to resolve any inconsistencies between the record and Daigle's statements.

Fourth, Daigle argues that the ALJ's referenced treatment notes showing improvement by Daigle are contradicted by the record. But, as discussed above, the record supports the ALJ's conclusion of improvement in multiple places.

Fifth, Daigle argues that the ALJ placed undue emphasis on the fact that Daigle's mental status exams showed appropriate decision making and thought processes. The ALJ properly used mental status examinations as part of his decision-making process. *See* 20 C.F.R. § 404.1513(a)(1) (objective medical evidence includes medical signs); *id.* § 404.1502(f)–(g) (signs include observable facts that can be medically described); *id.* § 404.1529(a) ("We will consider . . . any description your medical sources or nonmedical

sources may provide about how the symptoms affect your activities of daily living and your ability to work.").

Sixth, Daigle argues that, contrary to the ALJ's findings, the residual functional capacity determined by the Commissioner is inconsistent with the medical record. Instead, he argues that the treatment notes characterize him as "significantly dysfunctional." He does not cite to any portion of the record for such characterizations. To the extent he means to reference Dr. Rynning's treatment notes, the ALJ properly found these unpersuasive as discussed above.

Seventh, Daigle contests the ALJ's conclusion that he can work now given that he worked with OCD for a period of time. But he does not cite any authority contravening established precedent that working for years despite impairments (as he did) can support a finding of non-disability. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (working for years despite impairments supports a finding of non-disability where condition did not worsen at or near the time work ceased). And Daigle's argument that he could not perform certain requirements from past jobs does not preclude the ALJ's finding that he can perform his past job as it is generally performed in the national economy. *See Leggett*, 67 F.3d at 564 (claimant's inability "to perform certain 'requirements of his past job does not mean that he is unable to perform "past relevant work" . . .'; rather, the Commissioner may also consider the description of the claimant's past work as . . . generally performed in the national economy" (quoting *Jones v. Bowen*, 829 F.2d 524, 527 n.2 (5th Cir. 1987) (per curiam))).

Eighth, Daigle challenges the ALJ's conclusion that his OCD "rituals" did not take too much of his time. The ALJ's conclusion here is supported by treatment notes indicating that Daigle himself denies that his OCD-checking rituals take too much of his time.

No. 22-30721

Ninth, Daigle argues that the ALJ erred by rejecting the statement of Daigle's fiancée, Cristina DeMichiel. The ALJ considered DeMichiel's statement but noted that, as a lay witness, she was "not competent to make a diagnosis or argue the severity of [Daigle's] symptoms." DeMichiel's other statements concerning the extent to which Daigle was limited are consistent with the record and the ALJ's findings of mild to moderate limitations.[2]

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[2] Daigle also challenges the ALJ's conclusion that his limitations have not reduced his available occupational base. Specifically, he disputes the ALJ's conclusion that his "limitations had little or no effect on the occupational base of unskilled work at all exertional levels." But the ALJ made this conclusion as part of "*alternative* findings for step five" of the disability evaluation process (emphasis added). Challenges to this alternative step five finding are moot because the ALJ (properly) determined at step four that Daigle was not disabled; accordingly, the evaluation process terminated at that step. *See* 20 C.F.R. § 404.1520(a)(4). We thus need not and do not reach Daigle's challenge to the ALJ's alternative step five findings.