# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-60485

---

United States Court of Appeals
Fifth Circuit

**FILED**

September 3, 2025

Lyle W. Cayce
Clerk

Elnora Madkins,

*Plaintiff—Appellant*,

*versus*

Frank Bisignano, *Commissioner of Social Security Administration*,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:24-CV-6

---

Before Smith, Dennis, and Richman, *Circuit Judges*.

Per Curiam:

Elnora Madkins appeals the district court's judgment affirming the Social Security Administration Commissioner's final decision denying Madkins's application for disability benefits. Because the Commissioner's final decision is supported by substantial evidence and any alleged errors did not harm Madkins's substantial rights, we affirm.

## I

Elnora Madkins is a former machine operator with a high school education who left her job following an injury in the workplace. Her medical

No. 24-60485

issues include spinal stenosis, lumbar degenerative joint disease, bilateral carpal tunnel syndrome, arthritis, depression, and anxiety. In November 2018, she applied for a period of disability and for disability insurance benefits, alleging that her disability had begun in March of that year. Her claim was initially denied, denied upon reconsideration, and denied following a hearing before an administrative law judge (ALJ).

The Appeals Council of the Social Security Administration (SSA) denied her request for a review of that decision, so she appealed to the District Court for the Northern District of Mississippi. The district court reversed and remanded the decision with the specific instruction that the ALJ "evaluate the prior administrative medical findings and opinion evidence, including the September 2020 opinion of William Booker, M.D., in accordance with 20 C.F.R. §§ 404.1520c, 416.920c." The Appeals Council, in turn, remanded the case to the ALJ, who held another hearing.

The evidence before the ALJ on remand included separate psychiatric reviews and mental residual functional capacity evaluations from psychologists and state agency consultants Dr. Vicki Prosser and Dr. Glenda Scallorn, as well as a psychological test report and medical assessment of Madkins's mental ability to do work-related activities from psychologist Dr. Pamela Buck. The record also consisted of a June 2018 report by the Cooperative Disability Investigations Unit, an orthopedic evaluation by Dr. Jane Eason, a medical evaluation and a physical residual capacity evaluation from state agency consultant Dr. Glenn James, and a physical residual functioning capacity assessment from Dr. Carol Kossman. Additionally, the evidence included treatment notes, physician source statements, and medical assessments of Madkins's physical ability to do work-related activities from her treating physician, Dr. William Booker. The hearing also involved testimony from a vocational expert about the potential jobs available to a

hypothetical individual with restrictions similar to those that the ALJ ultimately attributed to Madkins.

On remand, the ALJ determined that Madkins suffered from the "severe impairments" of depression, anxiety, tendonitis in her shoulders, osteoarthritis, and degenerative disc disease, and that she could not perform her past relevant work as a machine operator.  Nevertheless, the ALJ found that she has "the residual functioning capacity to perform light work . . . except [she] can lift and carry up to ten pounds."  The ALJ elaborated that she "can occasionally stoop," "can frequently grasp, handle, feel, and finger," "can perform tasks that are simple in nature and can be performed in a routine work setting," and "can frequently interact with others in the work setting" but "can never climb ladders, ropes, or scaffolds."  Because "there are jobs that exist in significant numbers in the national economy that [she] can perform" with those described limitations, the ALJ determined that she is not disabled under the Social Security Act.  The Appeals Council deemed the ALJ decision the final decision of the SSA Commissioner, and Madkins again appealed to the district court.  Both parties consented to a magistrate judge's conducting of all proceedings in the case and entering final judgment, and the magistrate judge affirmed the decision of the SSA Commissioner.  Madkins timely appealed to our court.

## II

"We review the Commissioner's denial of social security benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.'"[1]  "Substantial evidence is merely enough that a

---

[1] *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)).

reasonable mind could arrive at the same decision; though the evidence 'must be more than a scintilla[,] it need not be a preponderance.'"[2]  "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision."[3]  "Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive."[4]  "We will not 're-weigh the evidence' nor, in the event of evidentiary conflict or uncertainty, will we 'substitute our judgment for the Commissioner's, even if we believe the evidence weighs against the Commissioner's decision.'"[5]

Moreover, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected."[6]  "The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error."[7]

To ascertain whether a claimant is disabled, the ALJ follows a five-step analysis that is set out in 20 C.F.R. § 404.1520(a)(4).[8]  That analysis requires considering

---

[2] *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (alteration in original) (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir 2012)).

[3] *Salmond v. Berryhill*, 892 F.3d 812, 819 (5th Cir. 2018) (quoting *Whitehead*, 820 F.3d at 779).

[4] *Taylor*, 706 F.3d at 602 (citing *Richarson v. Perales*, 402 U.S. 389, 390 (1971)).

[5] *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

[6] *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).

[7] *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012).

[8] *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4).

No. 24-60485

(1) whether the claimant is engaged in 'substantial gainful activity,' (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment 'meets or equals' one of the listings in the relevant regulations, (4) whether the claimant can still do [her] 'past relevant work,' and (5) whether the impairment prevents the claimant from doing any [other] relevant work.[9]

"Before reaching step four, the Commissioner assesses the claimant's residual functional capacity . . . ."[10]   A claimant's residual functioning capacity assessment "is a determination of the most the claimant can still do despite his [or her] physical and mental limitations and is based on all relevant evidence in the claimant's record."[11]  "The claimant bears the burden on the first four steps," but on the fifth step, "the burden shifts to the Commissioner to 'prove the claimant's employability.'"[12]  "If the claimant is found to be disabled or not disabled at a step, then that determination ends the inquiry."[13]

Madkins advances two arguments on appeal.  First, she argues that the ALJ erred by failing to consider the opinion of Dr. Prosser in the decision denying disability benefits.  Second, she argues that the ALJ erred by insufficiently considering the medical evidence from Dr. Booker.

―――――――――――――――――

[9] *Id.* (citing 20 C.F.R. § 404.1520(a)(4)).

[10] *Kneeland*, 850 F.3d at 754 (citing *Morgan v. Colvin*, 803 F.3d 773, 776 n.2 (5th Cir. 2015)).

[11] *Id.* (alteration in original) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005)).

[12] *Webster*, 19 F.4th at 718 (citing *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021)).

[13] *Keel*, 986 F.3d at 555 (citing 20 C.F.R. § 404.1520(a)(4)).

No. 24-60485

## A

Madkins argues that it was error for the ALJ not to consider the opinion offered by state agency consultant Dr. Prosser. The Commissioner responds that Madkins's argument should fail because she has not shown that this alleged error prejudiced her. Federal regulations require that the SSA, in "determining whether [a claimant] is disabled, . . . always consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [the agency] receive[s]."[14] The regulations further state, "When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."[15] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."[16]

In *Kneeland v. Berryhill*,[17] we vacated and remanded an ALJ's decision denying a claimant social security benefits because the ALJ had failed to address the opinion of a treating, examining physician that conflicted with the ALJ's conclusions.[18] The ALJ had determined that the claimant had the

_____

[14] *Kneeland*, 850 F.3d at 759 (quoting 20 C.F.R. § 404.1527(b)).

[15] 20 C.F.R. § 404.1520c(a).

[16] *Kneeland*, 850 F.3d at 759 (quoting 20 C.F.R. § 404.1527(a)(2)).

[17] 850 F.3d 749.

[18] *Id.* at 758-62; *see* 20 C.F.R. § 404.1527(c) (explaining that, when evaluating opinion evidence for claims filed before March 27, 2017, the Commissioner assigns greater

ability to "perform light work, 'limited to standing and walking two hours out of an eight-hour day,' among other limitations," while the physician whose opinion the ALJ did not consider "opined that she could stand for no longer than 30 minutes."[19]  The Commissioner argued that "any error in not addressing [the physician's] statement was harmless," but "the Commissioner point[ed] to no cases in which an ALJ's failure to address an examining physician's medical opinion [was] deemed harmless."[20]  We reasoned that this dearth of cases was due to the fact that "such an error makes it impossible to know whether the ALJ properly considered and weighed an opinion, which directly affects the [residual functioning capacity] determination."[21]  We remanded with instructions that the ALJ "complet[e] a holistic evaluation of [the claimant's] impairments that takes into account the physical, cognitive, and psychological evidence and explain[s] what weight he affords the various medical opinions."[22]

---

weight to the opinions of treating and examining physicians than to non-examining physicians).  *But see* 20 C.F.R. § 404.1520c(a) (explaining that, for claims like Madkins's that were filed on or after March 27, 2017, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"); *Webster v. Kijakazi*, 19 F.4th 715, 718-19 (5th Cir. 2021) ("Notably, though, ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past."); *Williams v. Kijakazi*, No. 23-30035, 2023 WL 5769415, at *2 (5th Cir. Sep. 6, 2023) ("These new regulations eliminate the old hierarchy of medical opinions, no longer provide for any inherent or presumptive weight, and do away with the examining and non-examining physician terminology.").

[19] *Kneeland*, 850 F.3d at 759.

[20] *Id.* at 761-62.

[21] *Id.* at 762.

[22] *Id.*

Here, neither party disputes that Dr. Prosser's assessment constitutes a medical opinion. We agree that it so qualifies because it is a statement from a psychologist about Madkins's mental impairments, what she can still do despite those impairments, and her mental restrictions.[23] However, the instant case is distinguishable from *Kneeland*. While we viewed the physician's opinion as conflicting with the ALJ's decision in *Kneeland*, it is not at all apparent that Dr. Prosser's opinion conflicts with the ALJ's assessment of Madkins's mental and social limitations. Dr. Prosser opined that Madkins could "interact appropriately to coworkers and supervisors *on a limited basis*," and she rated Madkins's "ability to respond appropriately to changes in the work setting," "ability to interact appropriately with the general public," "ability to accept instructions and respond appropriately to criticism from supervisors," and "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes" as "*[m]oderately [l]imited*." Her evaluation did not elaborate on the parameters of those moderate limitations, nor does Madkins provide any further clarity on the matter in her briefing.

The ALJ, meanwhile, determined that Madkins could "*frequently* interact with others in the work setting." A policy decision from the SSA defines "frequent" as meaning that the activity may occur "from one-third to two-thirds of the time."[24] So, the ALJ limited Madkins's social interactions at work to only one-third to two-thirds of the day, which does not clearly conflict with the moderate limitations that Dr. Prosser proposed.

---

[23] *See* 20 C.F.R. § 404.1527(a)(2) (defining a medical opinion).

[24] SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983); *see also Gallant v. Heckler*, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984) (relying on the same SSA policy statement for the definition of "frequent"); *Villarreal v. Colvin*, 221 F. Supp. 3d 835, 849 (W.D. Tex. 2016) (same).

Since *Kneeland*, we have on at least one occasion, in an unpublished decision, deemed harmless an ALJ's failure to consider a state agency reviewing physician's opinion because of the claimant's failure to establish prejudice.[25] Given that the lack of conflict between Dr. Prosser's opinion and the ALJ's determination means that Madkins's substantial rights were not affected, any error on this point was harmless. Moreover, to the extent that Madkins argues that the failure to consider Dr. Prosser's opinion undermined the hypothetical question that the ALJ posed to the vocational expert during her hearing, she has forfeited this argument by raising it for the first time in her reply brief.[26]

**B**

Madkins further argues that the ALJ did not sufficiently consider Dr. Booker's opinions in ascertaining whether Madkins is disabled. Specifically, she claims that the ALJ (1) ignored Dr. Booker's treatment notes, (2) did not consider Madkins's decreased range of motion in her spine, and (3) did not consider Dr. Booker's diagnoses, Madkins's symptoms, and Dr. Booker's opinion regarding the amount of time Madkins would spend away from her work station, as documented in his physician source statements. The Commissioner responds that the ALJ reasonably assessed Dr. Booker's opinions and that substantial evidence supports the ALJ's conclusions.

In determining whether a claimant is disabled, an ALJ "must consider all the record evidence and cannot 'pick and choose' only the evidence that

---

[25] *See McCray v. Kijakazi*, No. 21-60401, 2022 WL 301544, at *2 (5th Cir. Feb. 1, 2022).

[26] *See Perez v. Bruister*, 823 F.3d 250, 273 n.31 (5th Cir. 2016) ("This court will not consider arguments raised for the first time in a reply brief.").

supports his position."[27]  Regulations provide that the SSA "will consider" the "medical opinions or prior administrative medical findings" provided by a medical source.[28]  However, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), [the agency] will articulate how [it] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis."[29]  The agency is "not required to articulate how [it] considered each medical opinion or prior administrative medical finding from one medical source individually."[30]

**1**

Madkins is incorrect in her assertion that the ALJ ignored Dr. Booker's treatment notes.  The ALJ decision discussed Dr. Booker's treatment notes from Madkins's April 2019 and May 2019 appointments when evaluating her musculoskeletal disorders.

**2**

Madkins is also incorrect in stating that the ALJ failed to consider the decreased range of motion in her spine.  The ALJ determined that Madkins suffered from degenerative disc disease, a spine condition, among other "severe impairments."  The ALJ's decision also repeatedly referenced Madkins's decreased range of motion in her back, and the ALJ restricted Madkins to light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the added restrictions that she can lift and carry "up to ten pounds"

---

[27] *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

[28] 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

[29] *Id*. §§ 404.1520c(b)(1), 416.920c(b)(1).

[30] *Id*. §§ 404.1520c(b)(1), 416.920c(b)(1).

rather than the twenty pounds permitted by the regulations, while also limiting her to occasional stooping and never climbing ladders, ropes, or scaffolds.[31]

To be sure, Dr. Booker opined that stricter restrictions were necessary: his assessments noted that she could stand, walk, or sit for about two hours in a normal workday, at most; restricted her to stooping and climbing stairs either "rarely" or "never"; restricted her to twisting "rarely" or "occasionally"; and restricted her to crouching and climbing ladders "never." In his May 2023 assessment, he opined that she could "frequently" lift and carry fewer than ten pounds and "occasionally" lift and carry ten pounds. Madkins argues that "[p]rejudice is established" by this error "as these opinions by Dr. Booker reduce [her] below even a sedentary capacity which would support a favorable decision in this claim from Ms. Madkins's onset date." But the ALJ explained that he found these opinions "unpersuasive because they are internally inconsistent and unsupported by the remaining record." For example, in June 2022, Dr. Booker opined that Madkins could twist "occasionally" and never climb stairs. Then, in May 2023, he opined that she could twist only "rarely" while also climbing stairs "rarely" without explaining why one of her physical abilities (climbing stairs) had improved while another (twisting) had deteriorated. Additionally, his assessment that she could "never" or "rarely" stoop conflicted with the observation from a Cooperative Disability Investigations interview in June

---

[31] *See id.* § 404.1567(b) (defining light work as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls," as well as noting that "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time"); *id.* § 416.967(b) (same).

2018 that she bent over and straightened back up—albeit slowly—twice in twenty-five minutes in order to pick up a pen.

Moreover, substantial evidence supports the limitation to perform light work: following an examination, Dr. Eason opined that Madkins could stand for a total of four hours, walk for a total of three hours, and sit for a total of eight hours in an eight-hour workday. She also opined that Madkins could occasionally lift and carry up to ten pounds and that she could occasionally climb stairs and balance but could never stoop, crouch, kneel, crawl, or climb ladders or scaffolds. Dr. James and Dr. Kossman both opined that she could stand, walk, and sit for about six hours in an eight-hour workday, with Dr. James concluding that she could occasionally stoop, crouch, kneel, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds, and Dr. Kossman concluding that she had no postural limitations. Both Dr. James and Dr. Kossman also opined that she could occasionally lift and carry up to twenty pounds and could frequently lift and carry up to ten pounds. The ALJ found all of these opinions "partially persuasive to the extent that they [were] consistent with and supported by the remaining record." The ALJ evaluated Madkins's decreased range of motion in her spine, and his determination is supported by substantial evidence.

**3**

The ALJ likewise did not err in failing to address the contents of Dr. Booker's physician source statements, which included Madkins's diagnoses and symptoms, as well as Dr. Booker's opinion about the amount of time she would be off task during the workday. The ALJ discussed various opinions from Dr. Booker, and the regulations do "not require[]" the agency "to articulate how [it] considered each medical opinion or prior administrative

medical finding from one medical source individually."[32]   The failure to specifically mention each individual physician source statement was not error when the ALJ had already discussed Dr. Booker's medical assessments of Madkins's physical ability to do work-related activities.

Moreover, the diagnoses and symptoms listed in Dr. Booker's most recent physician source statement largely mirror Madkins's severe impairments listed in the ALJ decision.  In May 2023, Dr. Booker wrote that Madkins was diagnosed with spinal stenosis, lumbar degenerative joint disease, bilateral carpal tunnel syndrome, and arthritis in multiple sites; he also noted that her symptoms included pain, joint stiffness, weakness, and anxiety.   The ALJ determined that her severe impairments included depression, anxiety, tendonitis in her shoulders, osteoarthritis, and degenerative disc disease.  These impairments would seem to account for Dr. Booker's diagnoses of conditions affecting her back and joints as well as her symptoms of pain, joint stiffness, and anxiety.  To the extent gaps exist between the diagnoses and symptoms that Dr. Booker listed compared to the ALJ decision's list of severe impairments, Madkins has not explained how such differences have affected her substantial rights, and therefore she has not met her burden of showing prejudice.[33]

Finally, substantial evidence supported the lack of any restriction in the ALJ's decision pertaining to the time that Madkins would likely be off task during the workday.  In Dr. Booker's physician source statements, he estimated that she would be off task for twenty-five percent of a normal workday "due to [her] impairment[s]."  But according to Dr. Booker's own

---

[32] *Id*. §§ 404.1520c(b)(1), 416.920c(b)(1).

[33] *See Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error.").

treatment notes from the appointments immediately preceding the June 2022 and May 2023 physician source statements, Madkins denied having trouble concentrating. Dr. Eason also noted that her concentration was "good," and Dr. Buck described her attention and concentration as "adequate." Additionally, Dr. Prosser opined that she could "maintain attention and concentration adequately for 2-hour periods in an 8-hour workday." Dr. Scallorn, whose opinion the ALJ deemed "persuasive to the extent that it is consistent with and supported by the remaining record," likewise opined that Madkins was "[c]apable of understanding and following directions" to complete "at least simple tasks" for two-hour periods during an eight-hour workday. Given the presence of this evidence supporting Madkins's ability to concentrate, coupled with Dr. Booker's failure to offer any explanation as to why he believed her concentration capabilities to be so limited, we cannot say that the ALJ erred in not restricting Madkins based on her potential time off task.[34]

\* \* \*

We AFFIRM the judgment of the district court.

---

[34] *See DeJohnette v. Berryhill*, 681 F. App'x 320, 321-22 (5th Cir. 2017) (holding that "[t]he ALJ was well within its discretion to conclude that [the doctor's] checking a single box on a single form without any supporting medical evidence did not outweigh the other substantial record evidence supporting" the ALJ's finding).